20742. NORMAN, tax-commissioner, *v.* SOUTHWESTERN RAILROAD COMPANY.

DECIDED FEBRUARY 23, 1931.

*Park & Strozier, R. C. Norman, J. A. Smith,* for plaintiff.
*Lawton & Cunningham,* for defendant.

BELL, J. Southwestern Railroad Company, protesting, paid to R. C. Norman, State tax-commissioner, the sum of $180.30 demanded by the commissioner as a tax for the last quarter of the year 1929, under the act of August 29, 1929, known as the gross-receipts-tax act (Ga. L. 1929, p. 103), and the present suit was brought by the railroad company, under section 17 of this act, to recover the amount paid. The general demurrer of the tax-commissioner was overruled, and he excepted. The question for decision is whether the railroad company was doing business within

the meaning of the statute under which the tax-commissioner made the assessment. The main purpose of the act, as stated in its caption, is "to provide for the raising of public revenue by a tax upon the privilege of engaging in certain occupations and by a tax upon certain business and commercial transactions and enterprises." With certain exemptions and qualifications, the act provides for the assessment and collection of a tax in varying percentages upon persons engaged in specified lines of business, including "steam railroads," as to which the rate was "three mills on the dollar upon the gross receipts of said business" (section 5); and upon every person engaged in any line of business besides those specifically mentioned "there is levied and shall be collected a tax equal to two mills on the dollar of the gross receipts of any such business" (section 7).

The record shows that the plaintiff was taxed as a steam railroad, under section 5, although it was not operating a railroad, having leased its property to another company, and counsel for the commissioner contend in their brief that if, on this account, the plaintiff is not subject to be taxed as a railroad as provided in section 5, it would nevertheless fall within the blanket provisions of section 7 and be liable for the lesser rate as stated in that section. The gross receipts of the company for the period in question amounted to $67,600.34, and were derived in part from rentals for its railroad and properties which it had leased to the Central of Georgia Railway Company, and in part from dividends and interest on stocks and bonds in which the rentals from the lease had been invested from time to time. These securities amounted to $231,099.52 par value. The plaintiff was incorporated for the purpose of conducting the business of a railroad (Ga. L. 1845, p. 132; Ga. L. 1856, p. 429); but its lease to Central of Georgia Railway Company was authorized by the State through special enactment, together with general laws. Ga. L. 1851-2, p. 119; Ga. L. 1892, p. 49, Civil Code (1910), §§ 2586, 2591; *Georgia R. Co.* v. *Haas*, 127 *Ga.* 187 (6, 7) (56 S. E. 313, 119 Am. St. R. 327, 9 Ann. Cas. 677). The present lease was executed in 1895, and was for the term of 101 years, renewable in like periods forever, the right to renewals to be in conformity with law and to continue through the period of the corporate existence of the lessee. The lease calls for payment of an annual rental amounting to $259,555, which is the

equivalent of five per cent. upon the outstanding capital stock of the lessor. Under the terms of the lease the lessee agreed to pay the current expenses incident to the management of the railroad, all claims for damages to persons and property arising out of its operation, and "all Federal, State, county or municipal taxes and assessments, ordinary or extraordinary, then resting or thereafter to be lawfully imposed upon the lessor or its property under its charter and the constitution and laws of the State of Georgia, or of the United States." The lease covered the entire railroad and appurtenances of the lessor, whose present activities are confined to receiving the rentals provided for in the lease, collecting and investing the income from securities into which previous rentals were converted, declaring dividends to stockholders, making tax returns such as the owners of property are required by law to make (such taxes, however, being paid by Central of Georgia Railway Company as provided in the lease contract), and maintaining corporate existence. For these purposes the lessor, the present plaintiff, has a president and a secretary and treasurer, but the Central of Georgia Railway Company. pays their salaries (though the plaintiff pays to its secretary an additional annual salary of $400), furnishes all necessary stock and account books and all stationery for the officers, supplies an office for the secretary and treasurer, and pays all necessary expenses of the transfer of plaintiff's stock, and of the advertisements incident to the payment of its dividends and to the meeting of its board of directors and stockholders. Lessee further agreed to keep the leased property in good order and repair and surrender it if the lease should be terminated for non-payment of rent. The plaintiff company agreed to maintain its corporate existence to the fullest extent necessary to preserve its charter and to protect the rights of its stockholders; but "save and except the maintenance of the organization of the lessor," the lessee was to maintain the plaintiff company's franchise, and to perform all of its duties to the State and to the public. The petition alleges, in effect, that this has been done and that both parties are in the situation contemplated by the lease contract; and there was an averment that the plaintiff owns no rolling stock, or any other property whatsoever except its invested funds, as hereinbefore referred to, and a small amount of office furniture, all of its other property being in the possession of and used by the lessee under the terms and conditions of the lease.

Applying the law to the facts as indicated, we are of the opinion that the plaintiff was not doing business within the meaning and purview of the gross-receipts-tax law. It is clear that the act was not intended to lay a tax upon the plaintiff's primary franchise, that is, its right to live and have its being as a corporation, but that the imposition is an excise tax upon the secondary franchise, or the privilege of doing business in its corporate capacity. Von Baumbach *v.* Sargent Land Co., 242 U. S. 503 (37 Sup. Ct. 201, 61 L. ed. 460); Flint *v.* Stone Tracy Co., 220 U. S. 107 (31 Sup. Ct. 342, 55 L. ed. 389, Ann. Cas. 1912B, 1312); People ex rel. Lehigh & New York R. Co. *v.* Sohmer, 217 N. Y. 443 (112 N. E. 181); 14 A C. J. 544 et seq. *The assessment is not a tax on income.* In determining whether the plaintiff is liable the statute must be given a strict construction against the State and in favor of the citizen. *Case-Fowler Lumber Co.* v. *Winslett,* 168 *Ga.* 808 (2) (149 S. E. 211); *Standard Oil Co.* v. *Swanson,* 121 *Ga.* 412, 414 (49 S. E. 262); *Mayor &c. of Savannah* v. *Hartridge,* 8 *Ga.* 23 (6). The plaintiff is not liable unless it was engaged in doing business within contemplation of the statute. If it was not so engaged, the magnitude of its business or receipts is immaterial. On the other hand, it makes no difference how small a business it may have carried on, provided its gross receipts exceeded the exemption (see section 8), if it in fact did engage in business. In the former case it would be nontaxable; in the latter taxable. The term "doing business" has been the subject of definition in many decisions. Our own Supreme Court has approved the following definition and illustration: "Business, in the sense in which occupation tax is applied, does not, generally speaking, mean property. It means the activity, the energy, the capacity, the opportunities by which results are reached—a condition rather than fixed tangible objects from which conditions arise. Two men may engage in the same business, the one with a million dollars and the other with one thousand dollars, and the latter from business capacity and opportunity may make the profit, and the other from lack of it accumulates nothing but disappointments." *Atlantic Postal Telegraph Co.* v. *Savannah,* 133 *Ga.* 66, 77 (65 S. E. 184).

But the act under consideration supplies its own definition, and this is controlling. "The term 'business' as used in this act shall include all activities engaged in or caused to be engaged in with

the object of gain, benefit, or advantage, either direct or indirect, and not excepting sub-activities, producing marketable commodities used or consumed in the main business activities, each of which sub-activities shall be considered business engaged in, taxable in the class in which it falls." The act defines also the term "gross receipts," but that is a different matter, and will have nothing to do with the question of whether the plaintiff was doing business, except that all portions of the act are to be considered · in arriving at the intention which underlies any part of it. . It is declared that "the term 'gross receipts' means the value proceeding or accruing from the sale of tangible property (real or personal), or service, or both, and all receipts, actual or accrued, by reason of the investment of the capital of the business engaged in, including interest, discount, rentals, royalties, fees, or other emoluments, however designated." The language, "all receipts, actual or accrued, by reason of the investment of the capital of the business engaged in, including interest, discount, rentals, royalties, fees, or other emoluments, however designated," does not enlarge the meaning of the term "business," but simply provides that where a business is in fact engaged in, then its gross receipts shall include all receipts, actual or accrued, by reason of the investment of the capital of such business, such as interest, discounts, rentals, royalties, fees, or other emoluments, however designated.

While we have said that the definition contained in the act will determine the present case, it is substantially the same as that enunciated or adopted by the courts, especially the Supreme Court of the United States, and the decisions may therefore be of assistance in the solution of the question sub judice. In Flint v. Stone Tracy Co., supra, it is said that "business" is a very comprehensive term and embraces everything about which a person can be employed; "that which occupies the time, attention, and labor of men for the purpose of a livelihood or profit." The statute refers to "activities," and the idea connoted by this term must not be overlooked.

The facts of the instant case, when reduced to their last analysis, are that the plaintiff company, with the consent of the State, has leased the sum of its railroad properties to another company, and is engaged only in doing those things necessary to maintain its corporate existence and to receive and distribute to its shareholders

the income from its property and from securities into which previous income has been converted. In McCoach *v.* Minehill &c. R. Co., 228 U. S. 295 (33 Sup. Ct. 419, 57 L. ed. 842), the Supreme Court of the United States, upon similar facts, said: "Mere receipt of income from the property leased (the property being used in business by the lessee and not by the lessor) and the receipt of interest and dividends from invested funds, bank balances, and the like, and the distribution thereof among the stockholders of the [corporation], amount to no more than receiving the ordinary fruits that arise from the ownership of property." In that case the question was whether a corporation was liable for a tax on business within the meaning of the Federal corporation tax act, in which the term "doing business" was not defined but was left for determination by the courts. In the case of Von Baumbach *v.* Sargent Land Co., supra, the court drew the distinction between "a corporation which has reduced its activities to the owning and holding of property and the distribution of its avails and doing only the acts necessary to continue that status, and one which is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain and such activities as are essential to those purposes." The test is not what the company could or could not do, but what it *is* doing.

There are other decisions to the same effect, both by the Federal Supreme Court and by other courts, but a discussion of them would unreasonably prolong this opinion. It is generally held that a corporation is not engaged in business and thus subject to a business tax where it has leased and turned over to another person or corporation the exclusive use of its property and the conduct of the only business for which its property was acquired or adapted. It may act, like a natural person, as the proprietor of property and receive income therefrom and reinvest such income without being considered as engaged in business within the meaning of the excise-tax laws. The expression "engaged in business" is one in common use. "It has the same meaning whether applied to a corporation or to a natural person. It is not apt or appropriate to describe one who has retired from business in which he had engaged and confines his activities to maintaining property let to another and used exclusively by the lessee in carrying on that business." Jasper & Eastern R. Co. *v.* Walker, 238 Fed. 533, 537. See, in this connec-

tion, Zonne v. Minneapolis Syndicate, 220 U. S. 187 (31 Sup. Ct. 361, 55 L. ed. 428) ; United States v. Emery, 237 U. S. 28 (35 Sup. Ct. 499, 59 L. ed. 825) ; Edwards v. Chile Copper Co., 270 U. S. 452 (46 Sup. Ct. 345, 70 L. ed. 678) ; People ex rel. Waclark Realty Co. v. Williams, 198 N. Y. 54 (91 N. E. 266) ; People ex rel. Lehigh & New York R. Co. v. Shomer, supra; Attorney-general v. Ware River R. Co., 233 Mass. 466 (124 N. E. 289) ; State v. Anniston Rolling Mills, 125 Ala. 121 (27 So. 921) ; State ex rel. American Savings Bank v. Superior Court, 116 Wash. 122 (198 Pac. 744) ; Anderson v. Morris &c. R. Co., 216 Fed. 83; New York Central &c. R. Co. v. Gill, 219 Fed. 184; Lewellyn v. Pittsburgh &c. R. Co., 222 Fed. 177; McCoach v. Continental Passenger Ry. Co., 233 Fed. 976; Lane Timber Co. v. Hynson, 4 Fed. (2d) 666. The only case which apparently holds to the contrary is Cedar Street Co. v. Park Realty Co., decided and reported with Flint v. Stone Tracy Co., supra, but it appears that the corporation there was doing an identical thing (managing and leasing a hotel) which it was chartered and organized to do, which fact would seem to make a difference. Attorney-general v. Boston & Albany R. Co., 233 Mass. 460 (124 N. E. 257) ; Harmer Coal Co. v. Heiner, 34 Fed. (2d) 725.

But almost the identical question here presented has been decided by our own Supreme Court in the case of *Harrison* v. *Forsyth Hunter Co.*, 170 *Ga.* 640 (153 S. E. 758). In that case the question was whether Forsyth Hunter Company was liable for the tax assessed by the act of August 29, 1929 (Ga. L. 1929, p. 84), against "all corporations incorporated under the laws of Georgia and doing business therein." In that case it was held that a corporation chartered by a superior court in this State for the purpose of pecuniary gain which owns but one piece of real property and which does nothing but collect and distribute among the shareholders the rent received for such property from another corporation, is not doing business within the meaning of that act. Numerous decisions were cited in support of the ruling made, including several of those referred to above in this opinion. We hold that the plaintiff corporation was not liable for the tax demanded by and paid to the commissioner, either under section 5 or under section 7 of the gross-receipts-tax act, and thus that the superior court properly refused to dismiss the petition on general demurrer. If

it could be said that the result of this decision would open the way for evasion of the law, we reply that any fear of such a consequence is entirely groundless, because if a person or corporation is the owner of an active business, and thus liable to be taxed under the gross-receipts-tax act, a leasing of the entire business to another would hardly result in materially reducing the amount of tax to be paid into the State treasury, since the transaction would merely render the lessee liable in place of the lessor and cause the tax to pass to the State from a different source or through a different channel. The lessee would be conducting the same business previously carried on by the lessor, and would be liable to the same extent for the tax upon gross receipts, although there might be some variation in such receipts.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*