J. M. & M. S. BROWNING CO. et al. v. STATE TAX
COMMISSION

No. 6727.   Decided January 9, 1945.   (153 P. 2d 993.)

See 61 C. J., Taxation, sec. 834. 51 Am. Jur., 726.

*Thatcher & Young*, of Ogden, for plaintiffs.

*Wayne Christofferson* and *Aldon J. Anderson*, both of Salt Lake City, for defendant.

WOLFE, Justice.

Writ of review to determine the lawfulness of certain deficiency tax assessments levied against the four plaintiff corporations for the years 1937 and 1938.

All of the named corporations were organized under the laws of the State of Utah. The Browning Brothers Company, Browning Arms Company and Bar B Company are the wholly owned subsidiaries of J. M. & M. S. Browning Company. For the purpose of this suit they may be considered as one consolidated company. For the tax years 1937 and 1938 the plaintiff corporations filed consolidated corporate franchise tax returns with the Tax Commission. The Commission, after auditing the returns, gave the corporation notice of a proposed deficiency tax assessment of $1,240.26 for 1937 and $1,201.94 for 1938. The corporations, hereinafter sometimes referred to as petitioner, filed

a claim requesting refunds of $1,597.63 and $608.83 for the years 1937 and 1938 respectively upon the theory that there had been an overpayment on the corporate franchise tax for each of these years.

After hearing the Commission sustained its proposed deficiency assessments and denied the petitioner's claim for refunds. The correctness of this ruling is questioned by this writ of review. There is no dispute concerning the facts, most of which were presented by way of stipulation. The parties divide over the correct construction of Section 80-13-21, U. C. A. as it applies to the petitioner.

Before construing and applying Section 80-13-21 to the facts of this case we pause to note the nature of the tax liability imposed. Chapter 13 of Title 80, U. C. A. 1943, is entitled "Franchise and Privilege Taxes." Section 3 requires every bank or corporation, other than national banks or corporations expressly exempted, to pay to the state for the privilege of exercising its corporate franchise or for the privilege of doing business in this state, a tax equal to 3% of its net income allocated to the state in a particular manner. The tax is not an income tax. The net income of the tax paying corporation to be allocated to Utah is merely the measure of the amount of the tax. The tax is imposed on the privilege of exercising the corporate franchise or on the privilege of doing business in Utah. See *American Inv. Corp.* v. *State Tax Commission*, 101 Utah 189, 120 P. 2d. 331. The method of computing and allocating the net income to Utah is set forth in Section 80-13-21. This dispute arises over the construction of this latter section, which provides:

"80-13-21. Rules for Determining Net Income Allocated to This State.

"The portion of net income assignable to business done within this state, and which shall be the basis and measure of the tax imposed by this chapter may be determined by an allocation upon the basis of the following rules:

"(1) Rents, interest and dividends derived from business done

outside this state less related expenses shall not be allocated to this state.

"(2) Gains from the sale or exchange of capital assets consisting of real or tangible personal property situated outside this state less losses from the sale or exchange of such assets situated outside this state shall not be allocated to this state.

"(3) Rents, interest and dividends derived from business done in this state less related expenses shall be allocated to this state.

"(4) Gains from the sale or exchange of capital assets consisting of real or tangible personal property situated within this state less losses from the sale or exchange of such assets situated in this state shall be allocated to this state.

"(5) If the bank or other corporation carries on no business out side this state, the whole of the remainder of net income may be allocated to this state.

"(6) If the bank or other corporation carries on any business outside this state, the said remainder may be divided into three equal parts.

"(a) Of one third, such portion shall be attributed to business carried on within this state as shall be found by multiplying said third by a fraction whose numerator is the value of the corporation's tangible property situated within this state and whose denominator is the value of all the corporation's tangible property wherever situated.

"(b) Of another third, such portion shall be attributed to business carried on within this state as shall be found by multiplying said third by a fraction whose numerator is the total amount expended by the corporation for wages, salaries, commissions or other compensation to its employees and assignable to this state and whose denominator is the total expenditures of the corporation for wages, salaries, commissions or other compensation to all of its employees.

"(c) Of the remaining third, such portion shall be attributed to business carried on within this state as shall be found by multiplying said third by a fraction whose numerator is the amount of the corporation's gross receipts from business assignable to this state, and whose denominator is the amount of the corporation's gross receipts from all its business.

"(d) The amount assignable to this state of expenditures of the corporation for wages, salaries, commissions or other compensation to its employees shall be such expenditure for the taxable year as represents the compensation of employees not chiefly situated at, connected with or sent out from, premises for the transaction of business owned or rented by the corporation outside this state.

"(e) The amount of the corporation's gross receipts from business assignable to this state shall be the amount of its gross receipts for the taxable year from

"(1st) Sales, except those negotiated or effected in behalf of the corporation by agents agencies chiefly situated at, connected with or sent out from premises for the transaction of business owned or rented by the corporation outside this state, and sales otherwise determined by the tax commission to be attributable to the business conducted on such premises,

"(2nd) Rentals or royalties from property situated, or from the use of patents, within this state.

"(f) The value of the corporation's tangible property for the purpose of this section shall be the average value of such property during the taxable year.

"(7) In the allocation of net income, gain or loss shall be recognized and shall be computed on the same basis and in the same manner as is provided in this chapter for the determination of net income

"(8) If in the judgment of the tax commission the application of the foregoing rules does not allocate to this state the proportion of net income fairly and equitably attributable to this state, it may with such information as it may be able to obtain make such allocation as is fairly calculated to assign to this state the portion of net income reasonably attributable to the business done within this state and to avoid subjecting the taxpayer to double taxation."

In applying the various rules set forth in Section 80-13-21 for determining the net income of the petitioner to be allocated to this state the following additional facts should be noted: During the years in question the J. M. & M. S. Browning Company and the Browning Arms Company did business in Utah and in Missouri, and had employees chiefly situated at, and carried on business from premises which were rented outside the State of Utah. The Bar B Company did business only in Utah. The Browning Brothers Company was inactive. J. M. & M. S. Browning Company, among other things not material to the issues of this case, engaged in the business of investing and reinvesting its funds in domestic and foreign stocks and bonds and holding the same for investment. This activity was managed from its general office in Ogden,

Utah. Occasionally it made loans also from its Ogden office. Its general executive and general accounting offices were maintained in Ogden, Utah. The record shows that it had income consisting of rents from properties situated both within and without the state of Utah, but there is nothing to show that any of the business activities connected with the management and control of these rental properties was carried on from offices located without the state. Since it does not appear that the Browning Arms Company carried on any investment business, it is not necessary here to note any further facts concerning the nature of its business activities.

The business of the Bar B Company consisted of conducting solely in Utah a general ranching and livestock raising business.

It may be noted that Section 80-13-21, subsection (1) and (3) provides for the allocation of rents, interest and dividends derived from business done within and without the state of Utah. There apparently is no dispute concerning the allocation of income in the form of interest. In regards to rents the Commission took the position that all income from rental properties should be allocated to Utah without regard to the location of the rental properties; that in obtaining rents the petitioner was engaged in the investment business and the rents received were derived from carrying on an investment business in this state. The petitioner took the view that income (rents) derived from rental of properties located within this state should be allocated to Utah; but contended that income derived from rental properties located without the state should not be allocated to Utah. In other words, petitioner contends that income from rental properties located without the state are not "derived from business done in this state" within the language of subsection (3). This forms the first issue of our determination.

In regard to income in the form of dividends the Commission took the view that all dividends received by the

petitioner should be allocated to Utah without regard to the location of or the nature of the business done by the corporation *paying* the dividend. The petitioner contends that where a dividend is paid by a corporation which does business both in Utah and in other states the dividend should be allocated to Utah (thus conceding that the job of allocating to Utah only part of such a dividend on the basis of the business done by the dividend paying corporation would be administratively impossible); but petitioner contends that where the dividend is paid by a corporation doing no business in Utah, none of the dividend should be allocated to Utah. The petitioner would thus have us put the emphasis on the "business done" by the *dividend paying* corporation rather than upon the "business done" by the taxpayer relying on *American Inv.* v. *Tax Comm.*, 101 Utah 189, 120 P. 2d 331. This forms the second issue. We discuss these issues in converse order.

In approaching the contention of the petitioner that the allocation under Section 80-13-21, subsections (1) and (3), is dependent upon the "business done" by the *dividend paying* corporation, it must be kept constantly in mind that the tax is imposed upon the *taxpaying* corporation for *its* privilege of doing business or exercising a corporate franchise in this state. By using the net income of the taxpayer, allocated to Utah as the measure of the amount of the tax imposed upon the privilege of doing business in Utah, the statute ties the amount of the tax to the income yielded from exercising the privilege of doing business or exercising the corporate franchise. It would be contrary to common sense to construe the phrase "derived from business done in this state" to refer to the "business done" by any corporation except the taxpayer. The use of net income allocated to Utah as the measure for the amount of tax to be paid by a corporation for the privilege of doing business has a reasonable, commonsense basis. The more net income realized from doing business in Utah, the more valuable the privilege and the higher the tax. If in making the allocation of net income of the taxpayer to Utah, the Tax

Commission is required to look, not at the business done by the taxpayer, but at the business done by some third corporation this reasonable basis is almost totally destroyed.

Many corporations carry on an investment business in connection with some other general line of business such as manufacturing, or railroading, or livestock raising, etc. Section 80-13-21 was designed with this fact in mind. Subsections (1) and (3) were clearly designed to govern income from an investment business whether operated in connection with some other line of business or by itself. These subsections govern income in the form of "rents, interest and dividends derived from business done" within and without the state of Utah. The "business done" in carrying on an investment business is to invest money in stocks, bonds, properties, first mortgages, and to make loans, etc., and to collect the fruits of such investments by collecting rents, interest and dividends. In reference to an investment business, the tax imposed by Section 80-13-3 is upon the privilege of conducting such a business. Where a corporation is conducting an investment business in Utah and also in other states, the income derived from its entire investment business must be allocated in the manner prescribed by subsections (1) and (3) of Section 80-13-21. Rents, interest and dividends derived from "business done" by the taxpayer without the State of Utah should not be allocated to Utah. Rents, interest and dividends derived from "business done" by the taxpayer within the state of Utah should be allocated to Utah. Where the investment corporation was doing business only in Utah, all of its net income in the form of rents, interest and dividends would be allocated to Utah. Our question is then one of determining whether or not the petitioner is conducting an investment business in states other than Utah, and if so whether particular income was derived from business done in Utah or from business done in other states, the controlling factor being to determine what constitutes "doing business" within the meaning of this section. In making this determination it must be kept

in mind that we are, for this phase of the case, dealing with a corporation conducting an *investment* business. Further the rule, while being one of exclusion and inclusion according to the particular facts involved, must be uniform in its application. The same conduct should be held to constitute the doing of business whether that conduct were done in Utah or done in another state. If upon certain conduct it would be held that a corporation was doing business in Utah so as to subject it to the corporate franchise tax, the same conduct in another state would constitute doing business in said other state and income derived therefrom would not be allocated to Utah. The test as to whether a corporation is doing business in states other than Utah under particular fact situations would therefore be: Would such conduct if carried on in Utah be held to constitute doing business so as to subject the corporation to the Utah corporate franchise tax.

The term "doing business" or business done" has often been before the courts for definition. The definitions differ widely depending upon the context in connection with which the term is found. See *People ex rel. Nauss* v. *Graves,* 283 N. Y. 383, 28 N. E. 2d 881; 13 Words and Phrases, Permanent Edition, 126. Little can be gained from a detailed study of the cases discussing the term "doing business" with a different context. This is one of the errors that led this court astray in *American Inv. Corporation* v. *State Tax Commission,* supra.

The stipulation of facts filed clearly shows that the petitioner is conducting an investment business in Utah. It maintains its office here. Its investment activities are carried on and managed from its Ogden office. It apparently makes loans only from its office in Ogden. Its general executive and general accounting offices are maintained in Ogden to manage and direct its investment business although its general offices for managing and directing the sale and repair of shot guns are maintained without the state. If it could not be held to be doing the investment business in Utah, it is difficult to say that it is doing that

business anywhere. See *Rubinstein* v. *Bouard,* 262 App. Div. 835, 28 N. Y. S. 2d 403. During the years in question it must be held that the petitioner was carrying on an investment business in Utah. Unless it were made to appear that the petitioner was also conducting an investment business (doing business) in another state all of its net income from its investment business done would be correctly allocated to Utah.

The facts as stipulated do not show that the petitioner was conducting an investment business anywhere other than in Utah during the tax years in question. It apparently maintained no offices in connection with its investment business other than its offices in Utah. All activities in connection with investments were managed from that office. The accounts were all kept there. The only thing that can be noted as having been done in another state is the holding of rental properties and possibly the buying and selling in other states of stocks and bonds. The record is silent as to the activities carried on in connection with the rental properties. While such properties would have to be cared for and managed and the profits would have to be collected there is nothing to indicate that this whole business was not conducted from the Ogden office. The mere acquisition and ownership of property and the holding of the same for investment purposes unaccompanied by anything further should not be held to constitute "doing business" within the meaning of the statute under construction. See generally *Singer Mfg. Co.* v. *Granite Spring Water Co.,* 66 Misc. 595, 123 N. Y. S. 1088; *Norman* v. *Southwestern R. Co.,* 42 Ga. App. 812, 157 S. E. 531; *United States* v. *Emery, Bird, Thayer Realty Co.,* 237 U. S. 28, 35 S. Ct. 499, 59 L. Ed. 825. It follows that all of the income from conducting its investment business was derived from business done in Utah. The holding of the Tax Commission in this regard must be affirmed. Insofar as the *American Investment Co.* v. *Tax Comm.* case, supra, is to the contrary, it is hereby expressly overruled.

Any other holding would permit an investment company totally to escape payment of a franchise tax so long as it carefully avoided investments in properties located in Utah or in corporations doing business in Utah. It could carry on a gigantic investment business and perform every business activity in connection therewith, maintain offices, agents, employees, etc., in Utah and yet be held to be doing no business in Utah so long as its investments were so limited. The net result would be to discourage investment in property located in Utah or in corporation doing business in Utah. Such an application of this statute was never intended by the legislature. Here the evidence fails to show that the tax paying corporation is engaged in any conduct or activity outside the state done in connection with its investment business. It is conducting an investment business only in Utah. All income derived from that business is subject to the Utah franchise tax.

The third and last issue presented arises from the allocation by the Tax Commission of the petitioner's net income from its non-investment business. The allocation of all net income other than income from conducting an investment business is controlled by subsections (5) and (6). Subsection (5) provides that if the corporation:

"carries on no business outside this state, the whole of the remainder of net income may be allocated to [Utah]."

The term "remainder of net income" referring to the remainder after the income from conducting the investment business had been allocated. If the corporation does carry on any business outside of the state of Utah, the remainder of net income (after income from investment business is allocated) is to be allocated to this state in accordance with the formula set out in subsection (6). The formula set up by subsection (6) is based upon an averaging process. One-third of the non-investment net income is to be multiplied by a fraction whose numerator

is the value of the corporation's tangible property in Utah and whose denominator is the value of its tangible property wherever situated. Another third is to be multiplied by a fraction which has as its numerator the amount the corporation expended for wages, salaries, commission or other compensation to employees assignable to Utah and its denominator is the amount expended for such items to all of its employees. The remaining one-third of the non-investment net income is allocated to Utah by multiplying said one-third by a fraction having as its numerator the gross receipts in Utah and the gross receipts everywhere. The averaging process taking into consideration the three items covered is calculated to approximate the correct amount of non-investment net income allocable to Utah.

In applying subsection (6) to the petitioner the Tax Commission took the position that any property giving rise to rental income had been already apportioned under subsections (1) and (3) and refused to include such property in the multiplying fraction provided for in (6) (a). The petitioner contends that the plain language of subsection (6) requires the inclusion of *all* property of the petitioner in the formula. The language of the section is so clear in this regard that we must hold that it is not open to construction. There is nothing uncertain or ambiguous in the language used. The section provides specifically that the denominator of the fraction shall be "the value of *all* the corporation's tangible property wherever situated." It must be held to mean what it says. All of the corporation's tangible property is to be taken into consideration. The very averaging process indicates that the language was advisedly used. The Tax Commission was in error in this regard.

The order of the Tax Commission is vacated and the matter is remanded for further proceedings in conformity to holding of this decision.

McDONOUGH and WADE, JJ., concur.

LARSON, Chief Justice, dissents.

TURNER, Justice (dissenting).

I dissent. However, I do agree with Mr. Justice WOLFE'S opinion wherein it says:

"The tax is not an income tax. * * * The tax is imposed on the privilege of exercising the corporate franchise or on the privilege of doing business in Utah."

Having made this declaration, I think the statute involved should be applied consistently with the same. The following excerpt is taken from the opinion:

"The method of computing and allocating the net income to Utah is set forth in Section 80-13-21. This dispute arises over the construction of this latter section, which provides: '80-13-21. Rules for Determining Net Income Allocated to This State. The portion of net income assignable to business done within this state, and which shall be the basis and measure of the tax imposed by this chapter may be determined by an allocation upon the basis of the following rules: (1) Rents, interest and dividends derived from business done outside this state less related expenses shall not be allocated to this state."

My disagreement with the prevailing opinion arises out of its application of this provision of the statute and the comments and holding in reference to the opinion of this court in *American Inv. Corp.* v. *State Tax Comm.*, 101 Utah 189, 120 P. 2d 331. The facts in the case at bar disclose that the plaintiff companies are Utah corporations. The Browning Arms Company has an established place of business in St. Louis, Mo. The plaintiffs receive royalties from the manufacture and sale of Browning guns, etc. However, these matters of business are not in controversy.

Our dispute arises over allocation of rents, interest and dividends derived from business done outside of this state. The statute says these shall not be allocated to the State of Utah, but the prevailing opinion does allocate these to Utah, saying in substance that rents, interest and dividends derived from business done outside of Utah are derived from business done in Utah because the plaintiffs doing such business are engaged in the investment business and

their business is business done in Utah. It purposely eliminates the provisions of the statute by covering the companies with a cloak so great that everything is included. There can be no exceptions. The prevailing opinion does not define the term, "Doing Business," and I think fails to cite authority to support its grasping reach for more money to be subjected to taxation. Clearly, such an exertion is for tax on income, not on franchise. It seems that the procedure advocated is an attempt to avoid the statute. I find this unacceptable. We have no judicial right to avoid a statute by judicial legislation where the wording of the statute is unambiguous. Experience may prove that a statute cannot be applied accurately or efficiently, but this fact calls for legislative attention, not for judicial legislation.

I am also concerned with the natural and probable effects of the prevailing opinion. Its sweep is so broad that I am fearful it will be accepted by Utah corporations with capital invested outside of this state as an invitation to leave and find some other state as a home where working conditions and government agencies are more favorable. Neither justice nor reason should require any such thing and unless the statute warrants such construction, it should be avoided.

I am of the opinion that this court correctly construed the statute involved herein in the case of *American Inv. Corp.* v. *State Tax Comm.,* supra. I believe the tax in this case should be computed in accordance with the holdings of this court in that case, and if the Commission finds the statute is unworkable in some respect, this fact should be made known to the legislature.