Robert S. CALVERT et al., Appellants,

v.

**HUMBLE OIL & REFINING COMPANY,**
Appellee.

No. 11403.

Court of Civil Appeals of Texas.

Austin.

May 11, 1966.

Rehearing Denied June 8, 1966.

Waggoner Carr, Atty. Gen., Hawthorne Phillips, 1st Asst. Atty. Gen., T. B. Wright, Executive Asst. Atty. Gen., H. Grady Chandler, Kerns B. Taylor, Asst. Attys. Gen., Austin, for appellants.

McGinnis, Lochridge, Kilgore, Hunter & Wilson, Austin, Craig L. Vollmar and Walter B. Morgan, Dillard Baker, Houston, for appellee.

PHILLIPS, Justice.

This suit was brought by Humble Oil & Refining Company, a Delaware Corporation and the appellee here, against the Comptroller, and others, to recover $73,201.00 in franchise taxes for the year 1963 paid under protest. Humble alleged that certain interest and dividends which the Comptroller included as an additional basis for the franchise taxes paid by Humble were received from other affiliated foreign corporations and did not constitute gross receipts from its business done in Texas within the meaning of Article 12.02, Title 122A, Taxation-General, V.A.T.S.; that such were in the nature of nonbusiness income and independent of the conduct of its Texas business; that such income is attributable to the State of Delaware, its legal domicile and that the Comptroller had not established a taxable domicile here in Texas; that in requiring its income from the above-mentioned intangibles to be reported in the Texas Franchise allocation formula, the Comptroller was giving extra-territorial effect to the Texas tax laws in violation of Article 1, Sections 3, 16 and 19 of the Texas Constitution, Vernon's Ann.St., and Article 1, Section 8, and the Fourteenth Amendment of the U.S. Constitution, and resulted in an illegal multiplicity of taxes on the same capital.

The last contention, set out above, dealing with constitutionality was abandoned by Humble on appeal and will not be discussed further other than to state that it is conceded by both parties to this appeal that the position taken by the Comptroller is not inimical to either the Federal or State Constitution.

The Comptroller defended his position on the theory that the dividends and interest in question were received in Texas by Humble and constitute a part of its gross receipts from its business done in Texas, the state of its "business or commercial domicile," the location of its principal business office, the heart and center of its operations, where the direction and control of the corporate activities, including the interest and dividends in question were used in Humble's business. The Comptroller cites, as the basis of his defense, the change made in the law by the 1959 Legislature which will be set out in full and discussed further in this opinion.

Both parties moved for sumary judgment and that of appellee Humble was sustained and judgment rendered thereon for a [1] major portion of the taxes paid under protest.

We reverse and render the judgment of the trial court and hold that Humble take nothing by its suit.

Appellant Comptroller is before this Court with five points of error,[2] briefed

---

1. The trial court allowed appellee to recover $69,921.00 of the $73,201.00 sued for, the difference apparently resulting from taxes recovered by the Comptroller, the basis of which were intangibles received by Humble from business, the sources of which were within Texas.

2. "FIRST POINT: The error of the Court in granting Appellee's Motion For Sum-

together, which can be summarized in the following questions: Can Humble, a foreign corporation incorporated in the State of Delaware, have a business or commercial domicile in Texas for the purpose of taxation by the State? Are the interest and dividends or intangibles in question, admittedly not taxable by the law and the administrative rulings of the Comptroller prior to 1959, taxable by the law as it was amended in 1959? We answer both of these questions in the affirmative.

 The Texas franchise tax is a tax upon the privilege of doing business within the State. The privilege, both of domestic and foreign corporations, is measured by the Corporation's total capital, surplus and long term debt apportioned to the State. The apportionment ratio is a fraction, the numerator of which is the gross receipts from business done within Texas and the denominator of which is the gross receipts from the Corporation's entire business.

 The general common law rule applicable to the taxing of intangibles is that they are taxable at the owner's domicile or State of incorporation. Humble contends that this common law rule should be applied to the intangibles in question as there has been no specific law enacted by the Legislature to change the general rule, or, in other words, the Legislature has never passed a law authorizing a commercial or business domicile for a foreign corporation.

 We cannot agree with this contention. The theory of a commercial domicile has been a part of the common law since

mary Judgment on the ground that no controverted fact issue was presented by the record on the question of whether the business or commercial domicile of appellee was in Texas and thus whether its income from its intangibles, such as interest and dividends received from out-of-state corporations and entities should be reported in its Texas franchise tax allocation formula and return.

SECOND POINT: The error of the Court in granting Appellee's Motion For Summary Judgment on the ground that the dividends and interest received by it from foreign corporations or other entities as the result of its investment in intangibles (stocks, bonds, etc.) owned and held in Texas, the state of its business or commercial domicile, did not constitute 'business receipts within Texas' within the meaning of the franchise tax allocation formula of the 1959 Amendment, Art. 12.02, Title 122A, Taxation-General, R.C.S. of Texas.

THIRD POINT: The error of the Court in granting Appellee's Motion For Summary Judgment on the ground that the Appellee's intangibles (interest and dividends received from foreign corporations and entities) were in the nature of non-business income and independent of the conduct of Appellee's Texas business and thus not reportable as 'business receipts within Texas' as comprehended by the franchise tax allocation formula of the 1959 Amendment, Art. 12.02, Title 122A, Taxation-General, R.C.S. of Texas.

FOURTH POINT: The error of the Court in granting Appellee's Motion For Summary Judgment on the ground that, in requiring Appellee's income from its intangibles (interest and dividends received from foreign corporations and entities) to be reported in the numerator of the Texas franchise allocation formula, the Comptroller of the State of Texas was thereby giving extraterritorial effect to the Texas laws in violation of Art. 1, Sections 3, 16, and 19 of the Texas Constitution, and Article 1, Section 8, and the Fourteenth Amendment of the U.S. Constitution, thereby resulting in illegal multiplicity of taxes on the same capital.

FIFTH POINT: The error of the Court in denying and failing to grant Appellants' Motion for Summary Judgment that Appellee take nothing by its suit on the basis that since Appellee's business or commercial domicile was in Texas, the Appellee's income from its intangibles of interest and dividends received from out-of-state corporations and entities are properly business income and not independent of Appellee's Texas business and thus reportable in the numerator of the franchise tax formula and come within the phrase of Art. 12.02(d), Title 122A, Taxation-General, R.C.S. of Texas, 'all other business receipts within Texas' under the undisputed facts developed in the record, and in view of the fact that such a holding does not involve illegal multiplicity of taxes, or give extraterritorial effect to any Texas laws or violate the Texas or federal Constitution."

ancient times in both England and in the United States as an exception to the general rule announced above. See Wheeling Steel Corporation v. Fox, 298 U.S. 193, 80 L.Ed. 1143, 80 L.Ed. 1143; First Bank Stock Corporation v. State of Minnesota, 301 U.S. 234, 57 S.Ct. 677, 81 L.Ed. 1061 (1937). This theory has also been recognized in Texas as the common law rule. City of Amarillo v. Carter Trucking, Tex.Civ.App., 380 S.W.2d 177; Wirt Franklin Petrol Corp. v. Gruen, 5th Cir., 139 F.2d 659.

While there are no cases in Texas directly in point, we hold that if the facts are such that the exception to the general rule is applicable, it should apply.

Prior to September, 1959, Humble was a domestic corporation with a permit to do business in other states. Thereafter it became a foreign corporation incorporated in Delaware. Its Delaware charter and Texas permit authorize Humble to make loans and investments out of its surplus funds and deal in securities from which the interest and dividends are in issue here. It carries on business in forty nine states and is qualified to do business in all fifty. It maintains a domiciliary office in Washington, Delaware and region and division offices in New York City, New Orleans and Tulsa. It received $19,510,117.00 in stock dividends and $6,311,383.00 in interest during the tax year of 1963. The stock certificates are kept in its offices in Houston, Texas and the notes are located either in Houston or in the offices of the organizational unit which carries the account on its books. The Board of Directors' meetings and the stockholders' meetings have always been held in Houston, Texas. At the end of 1963, all but sixteen of the fifty-one directors and officers resided and worked in the Houston office. Those in the Houston office include the Chairman of the Board and Chief Executive officer, President and Director, two Executive Vice Presidents and Directors, General Counsel and Director and his associate, Vice Presidents for exploration, Supply and Transportation for Production

and for Public Affairs, the Controller and his two assistants, Secretary and several assistants, Treasurer and several assistants. Others are stationed at designated regional offices outside Texas. There seems to be no controversy over the fact that Humble's actual corporate headquarters or business or commercial domicile is in Houston, Texas.

This brings us to our second question as to the correctness of the Comptroller's position under the present franchise tax law.

In 1930, Article 7084, V.C.S., relating to foreign corporations was amended, the language specifying that the receipt ratio in question to be "the gross receipts *from its business done in Texas* bears to the total gross receipts of the corporation from its entire business." (Italics added.) This formula remained in effect until the amendment in question of 1959 even though the rate was increased from time to time by the Legislature. Prior to the amendment of 1959 by administrative interpretation and application of the Statute, the Comptroller ruled that if dividends and interest were paid by a Texas Corporation (i.e., one incorporated in Texas), they were considered as coming from a Texas source, and such receipts were included in the numerator of the above-mentioned formula. This formula or rule was derived from that portion of Article 7084 specifying "from its business done in Texas." This ruling further specified that if dividends and interest were paid by a corporation chartered in a State other than Texas, such receipts were not included in the numerator of the formula. Thus the location of the payor was the deciding factor.

In 1959, Article 7084 was changed and recodified in Article 12.02, Title 122A, Taxation-General, R.C.S. of Texas and provided as follows:

"* * * the term 'gross receipts from its business done in Texas' shall include:

(a) Sales of tangible personal property located within Texas at the time of the receipt of or appropriation to the orders

where shipment is made to points within this State,

(b) Services performed within Texas,

(c) Rentals from property situated, and royalties from the use of patents or copyrights, within Texas, and

(d) All other business receipts within Texas."

Humble contends that there has been no change in the amendment of 1959, consequently the long standing administrative interpretation of the Franchise Tax Statute by the Comptroller has been sanctioned by the Legislature.

■ We do not agree with this. We hold that the wording of Section (d) "all other business receipts within Texas" means business receipts received in Texas is applicable to the intangibles in question thus placing the emphasis on the place of receipt rather than the place of the payor as the law was previously interpreted.

■ In American Surety Co. of New York v. Axtell Co., 120 Tex. 166, 36 S.W.2d 715, the Court quotes with approval 36 Cyc., Paragraph 10, p. 1165, as follows:

" * * * An amended act is ordinarily to be construed as if the original statute had been repealed, and a new and independent act in the amended form had been adopted in its stead; or, as frequently stated by the courts, so far as regards any action after the adoption of the amendment, as if the statute had been originally enacted in its amended form.

* * * * * *

It will be presumed that the Legislature, in adopting the amendment, intended to make some change in the existing law, and therefore the courts will endeavor to give some effect to the amendment."

■ It is common knowledge that the Legislature in 1959 was actively seeking additional ways in which to finance state government.

■ In addition, we have the construction presently given the act by the administrative officer designated by the Legislature to enforce the act. The rule in this regard is that construction of a statute by the official charged with its administration should be sustained unless clearly erroneous. See Yoakum County v. Slaughter, 109 Tex. 42, 195 S.W. 1129; Thompson v. Calvert, Tex.Civ.App., 301 S.W.2d 496.

Humble contends that, should the court hold that the prior law has been changed, the interest and dividends in question do not constitute business receipts, that such receipts are nonbusiness receipts and should be excluded. Humble argues that it is in the business of producing, manufacturing and marketing crude oil, natural gas and their products and is not in the business of dealing in securities. That the receipt of dividends and interest is incidental to plaintiff's operations and constitutes 0.8% of plaintiff's total receipts.

We overrule this contention. Investment income is either business income or nonbusiness income, depending on whether the business is unitary or not. A business is unitary if its investment operations are of a mutual benefit to its general operations, that is, is the income from the general operations placed in investments and is the income from investments used in the general business. If so, the corporation is conducting one business only, single and unitary in scope, and the income from intangibles is included in the general apportionment. First Bank Stock Corporation v. State of Minnesota, 301 U.S. 234, 57 S.Ct. 677, 81 L.Ed. 1061; Great Lakes Pipe Line Company v. Commissioner, Minnesota Supreme Court, 1965, 138 N.W.2d 612. There is no indication in the record that Humble's investment activities are separate from its general activities. Consequently, we hold that the income in question is business income.

Likewise, we overrule Humble's contention that the "business situs" rule is applicable here as an exception to the commercial domicile rule. Under Humble's reasoning, the effect of such a business situs exception would be that a portion of the intangibles in question have developed a taxable situs of their own, separate and apart from the commercial domicile of the owner, which, as we have held above, is Texas. Humble reasons that this portion of the intangibles are subject to the exception as the income-producing activities of the Humble Pipe Line Company occur partly within and partly without the State of Texas. That for the year in question Humble Pipe Line Company received 41.42 per cent of its total receipts from sources outside the State. In addition, Humble points out that the bulk of its interest receipts was from investments with its agent, a New Jersey Corporation. That the agent managed this investment from its offices in New York City. That the invested funds were from New York Banks, and the proceeds were received in New York. That the remainder from sources outside of Texas was derived from trade notes and accounts receivable, mortgage loans, loans to dealers and other investments arising from transactions with debtors located outside the State of Texas.

We, hold that the taxable situs of these intangibles under Section (d) of Art. 12.02 is in Texas, Humble's commercial domicile, Holly Sugar Corp. v. McColgan, 18 Cal.2d 218, 115 P.2d 8.

For comparable cases in other jurisdictions see Udylite Corp. v. Michigan Corp. & Securities Commission, 319 Mich. 1, 29 N.W.2d 132; Irvine Company v. McColgan, 26 Cal.2d 160, 157 P.2d 847, 167 A.L.R. 934, and J. M. and M. S. Browning Co. v. State Tax Commission, 107 Utah 457, 154 P.2d 993,

We reverse the judgment of the trial court and render judgment that Humble take nothing by its suit.

Reversed and rendered.