## UDYLITE CORP. *v.* CORPORATION & SECURITIES COMMISSION.

1. CORPORATIONS—FOREIGN CORPORATIONS—RIGHT TO DO BUSINESS—PRIVILEGE FEE—STATUTES.

    The requirement that a foreign corporation shall pay an annual privilege fee for the right to do business in this State and the basis of computing such privilege fee is statutory (2 Comp. Laws 1929, § 10140, as amended by Act No. 13, Pub. Acts 1933 [Ex. Sess.]; § 10143, as amended by Act No. 102, Pub. Acts 1935).

2. SAME—TAXATION OF CORPORATION'S INTANGIBLES.

    The tax imposed upon intangibles of a corporation under the corporation tax act is not a property tax, but is an excise tax in which the designated property of the corporation is used solely as a yardstick (2 Comp. Laws 1929, § 10140, as amended by Act No. 13, Pub. Acts 1933 [Ex. Sess.]; § 10143, as amended by Act No. 102, Pub. Acts 1935).

3. SAME—FOREIGN CORPORATIONS—INTANGIBLES—BUSINESS SITUS.

    Where a foreign corporation uses its intangible items of property in the over-all conduct of its business having a commercial domicile or business situs in this State, they may be considered at full value as a basis of computing its fee for the privilege of doing business herein in the absence of a showing that the intangibles involved were either used in or acquired from its business carried on outside the State (2 Comp. Laws 1929, § 10140, as amended by Act No. 13, Pub. Acts 1933 [Ex. Sess.]; § 10143, as amended by Act No. 102, Pub. Acts 1935).

4. SAME—INTANGIBLES—TAXATION—BUSINESS SITUS—STATUTES.

    Amendment of corporation tax statute which set forth ''that in determining the amount or value of intangible property, including capital investments, owned or used in this State by either a domestic or foreign corporation, such property shall

* Continued from Vol. 318.

(1)

be considered to be located, owned or used in this State for the purposes hereof, if used in or acquired from the conduct of its business in this State, irrespective of the domicile of the corporation,'' provided a business situs for intangible property irrespective of the domicile of the corporation (2 Comp. Laws 1929, § 10143, as amended by Act No. 102, Pub. Acts 1935).

5. TAXATION—INTANGIBLES—SITUS.

The common-law rule of situs of intangibles for taxation purposes prevails in this State except as modified by statute.

6. CORPORATIONS — TAXATION — COMMERCIAL DOMICILE — BUSINESS SITUS—COMMON LAW.

The concept of commercial domicile of a corporation and that of business situs are both departures from the common-law rule of situs for taxation purposes.

7. SAME—FOREIGN CORPORATIONS—COMMERCIAL DOMICILE—BUSINESS SITUS—TAX ON INTANGIBLES.

While a commercial domicile may be established in a State other than the State of incorporation if the corporation maintains its chief place of business in such other State and a business situs as to a corporation's intangibles in a State other than the State of incorporation arises only if such intangibles are acquired from or used in the business of the corporation in such other State, such distinction is not applied in an over-technical sense to defeat liability of foreign corporation for tax on intangibles not shown to have been used in or acquired from its business carried on outside of the State (2 Comp. Laws 1929, § 10140, as amended by Act No. 13, Pub. Acts 1933 [Ex. Sess.]; § 10143, as amended by Act No. 102, Pub. Acts 1935).

8. SAME—FOREIGN CORPORATIONS—BUSINESS SITUS—INTANGIBLES—COMMERCIAL DOMICILE.

Foreign corporation, engaged in buying and selling metals, chemicals and other commodities and machinery used in electroplating, polishing and other surface treatment of metal objects or parts and which maintains offices and warehouses in four other States but whose principal office and manufacturing facilities, officers and all except one director are located in this State *held*, to have both business situs as to its intangibles and also a commercial domicile in this State (2 Comp. Laws 1929, § 10140, as amended by Act No. 13, Pub. Acts 1933 [Ex. Sess.]; § 10143, as amended by Act No. 102, Pub. Acts 1935).

9. SAME—FOREIGN CORPORATIONS—INTANGIBLES—BUSINESS SITUS.

Intangibles of foreign corporation whose principal office and manufacturing facilities, books and records, officers and all except one of its directors are located in this State, *held*, to have a business situs in this State insofar as they included the stock of a wholly-owned subsidiary, United States treasury notes, or refund of Federal corporation excess profit taxes, where it is inferable such assets resulted from transactions accomplished by action in this State of the officers and directors, irrespective of whether or not such intangibles arose as a result of isolated and unusual transactions (2 Comp. Laws 1929, § 10140, as amended by Act No. 13, Pub. Acts 1933 [Ex. Sess.]; § 10143, as amended by Act No. 102, Pub. Acts 1935).

10. CERTIORARI—FINDINGS—EVIDENCE.

On appeal in the nature of certiorari the Supreme Court must accept the findings of the tribunal appealed from, if supported by competent evidence.

11. CORPORATIONS—CORPORATION TAX APPEAL BOARD—FINDINGS—EVIDENCE.

Finding of corporation tax appeal board that certain intangibles belonging to foreign corporation were owned or used in its business in this State and inclusion in computing annual privilege fees *held*, proper under record presented (2 Comp. Laws 1929, § 10140, as amended by Act No. 13, Pub. Acts 1933 [Ex. Sess.]; § 10143, as amended by Act No. 102, Pub. Acts 1935).

12. APPEAL AND ERROR—QUESTIONS REVIEWABLE.

Issue sought to be raised by appellee in counter statement of question involved on the appeal but not raised in appellant's statement of questions involved nor considered in appellant's brief is not passed upon on the appeal.

13. COSTS—PUBLIC QUESTION—BUSINESS SITUS OF INTANGIBLES OF FOREIGN CORPORATION.

No costs are allowed on appeal from corporation tax appeal board in determination as to business situs of intangibles of foreign corporation with commercial domicile in this State, a public question being involved (2 Comp. Laws 1929, § 10140, as amended by Act No. 13, Pub. Acts 1933 [Ex. Sess.]; § 10143, as amended by Act No. 102, Pub. Acts 1935).

Appeal from Corporation Tax Appeal Board. Submitted June 3, 1947. (Docket No. 5, Calendar No. 43,631.) Decided October 13, 1947.

Udylite Corporation, a Delaware corporation, appealed to the Corporation Tax Appeal Board from determination of Corporation and Securities Commission using certain intangible property in fixing amount of privilege fee. Determination affirmed. Plaintiff reviews by appeal in nature of certiorari. Affirmed.

*Butzel, Levin & Winston,* for plaintiff.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Daniel J. O'Hara* and *Gregory H. Frederick,* Assistants Attorney General, for defendant.

NORTH, J. This appeal in the nature of certiorari by the Udylite Corporation, a Delaware corporation, pertains to a controversy concerning the determinations by the Michigan corporation and securities commission that the Udylite Corporation, in addition to payments already made, is indebted in the sum of $613.58 for its privilege fee on its 1943 annual report, and in the sum of $603.37 on its 1944 annual report, which determinations were affirmed by the Michigan corporation tax appeal board on appeal thereto. Appellant claims that the computation of its privilege fees for the respective years was erroneous insofar as there was involved therein the corporation's intangible property consisting of its holdings in United States treasury notes, its investment in the stock of the Bright Nickel Corporation (for which appellant exchanged its own stock), and its estimated post-war refund of corporation Federal excess profit taxes. The controverted issue is the right of the State of Michigan to include the intangible items just above noted in the computation of appellant's annual privilege

fees payable to the State of Michigan for the years 1943 and 1944. The requirement in Michigan that a foreign corporation shall pay an annual privilege fee for the right to do business in Michigan and the basis of computing such privilege fee is statutory; and hence decision in the instant case turns upon the construction of the pertinent statutory provisions, which we quote:

"Sec. 4. Every corporation organized or doing business under the laws of this State (with certain exceptions) shall, * * * for the privilege of exercising its franchise and of transacting its business within this State, pay to the secretary of State * an annual fee of two and one-half mills upon each dollar of its paid-up capital and surplus, but such privilege fee shall in no case be less than ten dollars nor more than fifty thousand dollars." 2 Comp. Laws 1929, § 10140, as amended by Act No. 13, Pub. Acts 1933 (Ex. Sess.) (Comp. Laws Supp. 1940, § 10140, Stat. Ann. § 21.205).

"Sec. 5. In the case of computing the franchise and privilege fees * * * both as to domestic and foreign corporations, such computation shall be made upon the corporation's property, both tangible and intangible, owned or used in Michigan in the ratio that such property bears to the entire property of the corporation, and such ratio shall be applied by the secretary of State * to determine the amount of the authorized capital stock owned or used in Michigan, and to determine what portion of the corporation's paid-up capital and surplus, severally, are owned or used in Michigan. * * * None of the property or capital of any corporation subject to paying the privilege fee prescribed in section four which is located without the State of

---

* The powers and duties of the secretary of State under this act were transferred to the corporation and securities commission by Act No. 13, § 3, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 9769-3, Stat. Ann. § 19.783).—Reporter.

Michigan  *  *  *  shall in any case enter into the computation of the net amount of the authorized capital, or the capital and surplus, as the case may be, upon which the computation of the privilege fees shall be made: *Provided, That in determining the amount or value of intangible property, including capital investments, owned or used in this State by either a domestic or foreign corporation, such property shall be considered to be located, owned or used in this State for the purposes hereof, if used in or acquired from the conduct of its business in this State, irrespective of the domicile of the corporation.*" 2 Comp. Laws 1929, § 10143, as amended by Act No. 102, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 10143, Stat. Ann. § 21.208).

Hereinafter we refer to the above italicized portion of the statute as the 1929 amendment. In the instant case the material facts are stipulated. The business of the Udylite Corporation is that of buying and selling metals, chemicals and other commodities used in electroplating, polishing and other surface treatment of metal objects or parts. It also manufactures and sells electroplating and polishing machinery and equipment. Outside of Michigan this corporation does business of a national scope. It maintains offices and warehouses in the States of New York, Ohio, Illinois and California. Of appellant's 1942 total volume of business $1,570,580.79 was from Michigan transactions, and $5,346,988.70 from transactions outside of Michigan. For 1943 appellant's Michigan transactions amounted to $2,060,867.95, and its transactions outside of Michigan amounted to $7,172,728.41. However, appellant's principal office and manufacturing facilities are located in Detroit. The books and records of the corporation's business are kept in Detroit. All of its officers' and directors' meetings are held in Detroit; and all of its officers reside there, and with one excep-

tion the same is true as to the residence of its six directors.  The facts are such that Detroit may well be considered to be the location of the headquarters or the main business office of the Udylite Corporation. The contention of the appellee is that, under the circumstances of this case, the corporate domicile in Delaware is nothing more than a paper domicile, and therefore does not control decision herein.  And further, appellee claims that under the facts in the instant record the Udylite Corporation by its manner of conducting its business has established in this State a commercial domicile or as to its intangibles a business situs.  On the other hand appellant asserts that there is no provision in the Michigan law under which it can be held that it has either a commercial domicile or a business situs in Michigan; and that under the pertinent statutory provisions there was error in computing its 1943 and 1944 privilege fees in that they were computed on the basis of the intangibles hereinbefore noted being considered at their full value, rather than on the basis of a proportionate value fixed by the share or percentage of appellant's total business as compared with its Michigan business in the respective years considered.  In this connection it is said in appellant's brief:

"At the outset, it should be noted that the pertinent provisions of the 1929 act (the statute above quoted) deal, not with intangibles used in connection with the business of a corporation, or acquired from the conduct of its business, but only with such intangibles as are used in the conduct of the business of the corporation *in Michigan* or are acquired from the conduct of its business *in Michigan*."

The nature or character of the privilege fee has been definitely established in this State.  The tax imposed upon intangibles of a corporation under

the act here involved is not a property tax, but it is an excise tax in which the designated property of the corporation is used *solely* as a yardstick. *In re Truscon Steel Co.*, 246 Mich. 174.

The pertinent portion of the statute is italicized by us in our quotation above. This controlling proviso is stated in the disjunctive in that a corporation's intangibles are to be included in fixing its privilege fee if such property is "used in *or* acquired from" the corporation's business conducted in this State. Whether or not a foreign corporation, the appellant in this case, has a commercial domicile or a business situs in this State bears very materially on the issue as to whether it *uses* its intangibles in Michigan in the over-all conduct of its business. If it does so use its intangible items of property, then they may be considered at full value as a basis of computing its privilege fee. In the record before us, appellant has made no showing that the intangibles involved in this suit or any specified portion of them were either used in or acquired from its business carried on outside of Michigan, as contradistinguished from its business carried on in Michigan.

In view of the above it is important to determine whether appellant has a business situs as to its intangibles or a commercial domicile in this State, as is asserted by appellee. We are not in accord with what we understand is appellant's contention, that in Michigan there is no appropriate statutory provision and therefore in this State a foreign corporation can not have a commercial domicile. On this phase of the case appellant states in its brief:

"If and when the legislature of Michigan sees fit to adopt a statute which expressly incorporates the commercial domicile rule, the result sought by the commission (herein) may be accomplished. Until

the legislature does enact such a statute, the commission should be guided by the plain and express language of the statutes presently in force."

We agree with appellant's assertion that the commission should be guided by the statutes presently in force; but we know of no reason why under our present law consideration may not be given as to whether appellant has a business situs as to its intangibles or a commercial domicile in Michigan. Nearly 15 years ago the legal concept of a business situs was said by this Court to apply to the statute under consideration in the instant case. In *Reliable Stores Corp.* v. *City of Detroit,* 260 Mich. 2, it is said that "the legislature, taking notice of the repeated decisions that the doctrine could be accepted in this State only by legislative enactment, by Act No. 175, Pub. Acts 1929, amended the statute (2 Comp. Laws 1929, § 10143) governing privilege taxes of corporations and provided a business situs for intangible property 'irrespective of the domicile of the corporation.' " But, for the purpose of computing franchise and privilege fees, the 1929 amendment recognized the concept of commercial domicile just as clearly as it recognized that of business situs. They are both departures from the common-law rule of situs for taxation purposes, which prevails in this State except as modified by statute. Hence, we think it follows that appellant is in error in its contention that the concept of a commercial domicile or a business situs of a foreign corporation is not available and can not be made applicable to the instant case. In so concluding we do not overlook the contention that there is a distinction between a "business situs" and a "commercial domicile." In substance it is asserted that a commercial domicile may be established in a State other than the State of incorporation if the corporation maintains its

chief place of business in such other State. And in substance that, under the Michigan statute, a business situs as to a corporation's intangibles in a State other than the State of incorporation arises only if such intangibles are acquired from or used in the business of the corporation in such other State. While such distinction may, in a given case, be of consequence in passing upon the question of the corporation's liability for payment of ordinary taxes, we think it should not be applied in an over technical sense for the purposes of defeating the obvious result intended by the legislature in passing the 1929 amendment to the Michigan statute which obligates corporations to pay a privilege fee as a condition of doing business in this State. In short, it seems rather far-fetched to conclude that a foreign corporation may have its chief place of business in Michigan—*i.e.*, a commercial domicile, and still not be using or acquiring in a legal sense its intangibles, not having a business situs elsewhere, in the operation of its business at such chief or principal place of business. It is quite obvious that when in *Reliable Stores Corp.* v. *City of Detroit, supra,* it was said that by the 1929 amendment there was "provided a business situs for intangible property irrespective of the domicile of the corporation" the writer of that opinion was not concerned with the question as to whether the legislature by the amendment also recognized and adopted in this State the doctrine of commercial domicile within the scope of the amended statute. We are of the opinion that the 1929 amendment to the statute requiring the payment of franchise and privilege fees is broad enough to cover, and was intended to cover, situations involving the payment of such fees by foreign corporations having either a business situs as to its intangibles or a commercial domicile

in this State. Under the record in the instant case, we hold that plaintiff corporation has in the State of Michigan a business situs as to its intangibles and, also, a commercial domicile. See *Wheeling Steel Corp.* v. *Fox,* 298 U. S. 193 (56 Sup. Ct. 773, 80 L. Ed. 1143).

The crux of this controversy is whether under the facts disclosed it should be said that the intangibles here involved were "used in or acquired from" the conduct of appellant's business in Michigan. As above noted appellant's principal or main office and manufacturing facilities are in Michigan. Its records and books are kept here. Its officers and directors (with one exception) live here. The directors, who conduct appellant's business affairs, have their meetings in Detroit. The prices at which appellant's merchandise may be sold are determined by its executive officers at the Detroit office. In the absence of a contrary showing, it is fair and reasonable to infer that it was these directors at a Michigan meeting who finally consummated the transaction whereby stock of the Udylite Corporation was exchanged for the stock of the Bright Nickel Corporation and the stock in the latter corporation, a wholly-owned subsidiary, thereby became an intangible asset of appellant. The agreement by which this transaction was consummated recites that it was executed by appellant's "duly authorized officers." The Bright Nickel stock thus became a part of the capital or surplus of the Udylite Corporation (*White Brothers Lumber Co.* v. *Corporation Tax Appeal Board,* 222 Mich. 274), and under our view of this case it was properly included in the computation of appellant's privilege fees.

Also from this record it is a fair and justifiable inference that appellant's investments in United States treasury notes and its intangible assets in

the nature of a refund of corporation Federal excess profit taxes resulted from transactions consummated by its directors and officers acting within the State of Michigan. In other words, it is a fair inference from the record that in acquiring each of the above noted intangibles whatever was done incident to these transactions was accomplished by action in Michigan of appellant's officers or board of directors. We do not overlook appellant's assertion that the noted intangibles "arose as a result of isolated and unusual transactions," but it is our opinion that circumstance has no legal significance in decision of the instant case.

And further, since it appears from the record that the over-all business of the Udylite Corporation is conducted and controlled by its officers and directors whose place of meeting is in this State, and who function in this State, it would seem clear that in a realistic sense all of a corporation's assets are used or at least are usable in its general business here in Michigan. It follows that the designated intangibles are used incident to appellant's business in Michigan. At least there is no showing that these assets are not so used.

This appeal is in the nature of certiorari, and in such appeals we must accept the findings of the corporation tax appeal board, if supported by competent evidence. The opinion filed by that board, after stating that the entire management and control of the Udylite Corporation is located in Michigan, that its books and records are kept in Michigan, that all officers' and directors' meetings are held in Michigan, that all of such officers and directors (with the exception of one director) are residents of Michigan, that the main office is in Michigan and that the management of this corporation functions in Michigan, contains the following:

"That the items in dispute, namely, United States treasury bonds, the investment in shares of Bright Nickel Corporation, the estimated refund of excess profits tax and the reserve for post-war contingencies, are all subject to the control and use of the management in Michigan; that none of these disputed items were specifically allocated to or were specifically derived from any business or activities of the corporation outside of Michigan; that under * * * (the statute above quoted) the business situs rule of intangibles was established in Michigan as stated by the Supreme Court in *Reliable Stores Corp.* v. *City of Detroit,* 260 Mich. 2, and that the stipulated facts in this matter meet all the requirements to establish that the business situs of Udylite Corporation was in Michigan and that no facts have been offered to establish a business situs elsewhere. * * * It is the finding of this board that under the stipulated facts these intangibles were owned or used in this State by the Udylite Corporation and that such property is used in the conduct of its business in this State."

We are of the opinion that under this record the corporation tax appeal board reached the correct conclusion, and that in computing appellant's annual privilege fees for 1943 and 1944, the designated intangibles were properly included. In so concluding we are mindful of our holdings *In re Pantlind Hotel Co.,* 232 Mich. 330 (49 A. L. R. 1291); *In re Dodge Brothers,* 241 Mich. 665; and other early cases. But more recently (1929) the statute was altered by material amendment, including the insertion of the italicized portion of the statute hereinbefore quoted, and in consequence these earlier decisions are not now controlling of the issue presented in the instant case.

In its counter-statement of the question here involved appellee has included a further issue as to

whether the procedure adopted by it is "prohibited by the commerce clause of the Federal Constitution." That issue is not raised in appellant's statement of the question involved on this appeal nor is it considered in appellant's brief. Hence it is not passed upon in the instant appeal.

The determination of the corporation tax appeal board is affirmed, but since a public question is involved no costs are awarded.

CARR, C. J., and BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred. BUTZEL and DETHMERS, JJ., did not sit.