**HUMBLE OIL & REFINING CO.,**
**Petitioner,**

**v.**

**Robert S. CALVERT et al., Respondents.**
**No. A–11574.**

Supreme Court of Texas.

March 15, 1967.

Rehearing Denied May 3, 1967.

McGinnis, Lochridge, Kilgore, Hunter & Wilson, Lloyd Lochridge, Austin, Dillard Baker, Walter B. Morgan and Craig L. Vollmar, Houston, for petitioner.

Crawford C. Martin, Atty. Gen., Kerns B. Taylor, Asst. Atty. Gen., Don Bishop, Austin, for respondents.

POPE, Justice.

Humble Oil & Refining Co., a Delaware Corporation, with its principal place of business in Houston, Texas, sued the State Comptroller, Robert S. Calvert, and other proper officials, to recover certain franchise taxes paid under protest for 1963. Both Humble and the Comptroller filed motions for summary judgment. The trial court sustained Humble's motion and rendered judgment that it recover the sum of $69,921.00. The court of civil appeals reversed that judgment. 404 S.W.2d 147. We reverse the court of civil appeals' judgment and affirm that of the trial court.

The question presented is whether the Legislature, by enacting art. 12.02, Title 122a, Tax.-Gen., V.C.S. in 1959, intended to change the corporate franchise tax allocation formula with respect to receipts from intangibles. Humble contends that from 1917 to 1963, in calculating its franchise tax, it did not include the interest and dividends it received from corporations and other entities located outside of Texas as part of its business done in this state. This practice, Humble says, was consistent with the Comptroller's long-standing construction of the ambiguous phrase, "business done in Texas," contained originally in art. 7084, V.C.S. Humble argues that since this same phrase appears without definition in the present franchise tax statute, art. 12.02 which replaced art. 7084, it is apparent that the Legislature had no intention of rejecting its well-established meaning and adopting or authorizing a new one. Comptroller concedes that prior to 1959, receipts from intangibles were allocated by what we shall refer to as the location of payor test, and that under that test, the dividends and interest paid to Humble by out-of-state payors would not be included as business done in Texas. However, Comptroller contends that art. 12.02 not only codified art. 7084 but also amended it. By doing this, Comptroller argues that the Legislature manifested an intent to abandon the location of payor test and adopt the commercial domicile and business situs tests under which all of Humble's receipts from intangibles would be treated as part of its business done in Texas.

Prior to 1959, Texas' basic franchise tax allocation formula [1] was found in art. 7084. This article provided:

" * * * every domestic and foreign corporation heretofore or hereafter chartered or authorized to do business in Texas, or doing business in Texas, shall

---

1. 
$$\frac{\text{Gross receipts from business done in Texas}}{\text{Gross receipts from entire business}} \times \text{Taxable capital} \times \text{Tax rate}$$

\* \* \* pay \* \* \* a franchise tax \* \* \* based upon that proportion of the outstanding capital stock, surplus and undivided profits, plus the amount of outstanding bonds, notes and debentures \* \* \* as the gross receipts from its business done in Texas bears to the total gross receipts of the corporation from its entire business, \* \* \*."

The Legislature, however, did not state what receipts were to be included as "business done in Texas." To cure this omission, the administrators of the franchise tax adopted the location of payor test. Under this test only receipts from intangibles paid by a payor located in Texas were considered a part of the corporate taxpayer's "business done in Texas." Receipts from intangibles paid to a corporation by an out-of-state payor were not included within the meaning of "business done in Texas." The location of payor test was consistently applied by the Comptroller in assessing franchise taxes until 1963.

In 1959, the Legislature recodified the tax laws. Acts 56th Legislature, 3rd C.S., p. 187, ch. 1 (1959). Article 7084 was re-enacted as art. 12.02 in the recodification. The only difference between art. 7084 and art. 12.02 is the addition of four subsections which specifically allocate certain items to business done in Texas. Article 12.02 provides:

"Each corporation liable for payment of a franchise tax shall determine the portion of its entire capital taxable by the State of Texas by multiplying same by an allocation percentage which shall be the percentage relationship which the gross receipts from its business done in Texas bear to the total gross receipts of the corporation from its entire business.

"For the purpose of this Article, the term 'gross receipts from its business done in Texas' shall include:

"(a) Sales of tangible personal property located within Texas at the time of the receipt of or appropriation to the orders where shipment is made to points within this State,

"(b) Services performed within Texas,

"(c) Rentals from property situated, and royalties from the use of patents or copyrights, within Texas, and

"(d) All other business receipts within Texas.

"For the purpose of this Article, the term 'total gross receipts of the corporation from its entire business' shall include all of the proceeds of all sales of the corporation's tangible personal property, all receipts from services, all rentals, all royalties and all other business receipts, whether within or outside of Texas. Acts 1959, 56th Leg. 3rd C.S. p. 187, ch. 1."

Four years later, in 1963, the Comptroller, by reason of the four subsections of art. 12.02, determined that the location of payor test was no longer applicable and that he was authorized to adopt and apply the commercial domicile and business situs tests in allocating receipts from intangibles.

Before determining whether the language of art. 12.02 can bear the Comptroller's interpretation it is necessary to discuss briefly the various tests applied by taxing authorities to fix the tax situs of an intangible receipt. The four tests that are relevant to the present case are the common law or *mobilia* test, location of payor test, business situs test, and commercial domicile test.

The common law adopted the ancient Roman maxim *"mobilia sequuntur personam"* which taught that movables follow the person. Under *mobilia,* the courts indulge the fiction that intangibles are associated with the person of the owner and that situs is at the domicile of the owner. The rule was helpful in fixing the situs of

intangibles which lack physical characteristics, are represented by paper evidences such as notes and stock certificates, and are mere evidences of enforceable relationships between persons. United Gas Corporation v. Fontenot, 241 La. 488, 129 So. 2d 748 (1961). The rule developed when corporate operations were simple and when incorporation usually occurred in the state where the corporation intended to do its business and where it received its protection from the government. Southern Pacific Co. v. McColgan, 68 Cal.App.2d 48, 156 P.2d 81 (1945). Under this rule all of a corporation's receipts from intangibles have their location at its legal domicile, the state of incorporation. Newark Fire Ins. Co. v. State Board of Tax Appeals, 307 U.S. 313, 59 S.Ct. 918, 83 L.Ed. 1312 (1939); Farmers Loan & T. Co. v. State of Minnesota, 280 U.S. 204, 50 S.Ct. 98, 74 L.Ed. 371 (1930); Altman & Keesling, Allocation of Income in State Taxation, 34–35, 62, 75 (2d ed. 1950); 51 Am.Jur. Taxation § 463 (1944); 143 A.L.R. 361 (1943); 76 A.L.R. 806 (1932).

> "Thus, even though the state of the domicile of the owner of such property confines its tax to income from sources therein, individuals and corporations domiciled in such state may be required to include interest and dividends in computing their taxable income on the theory that such income is derived from sources in the taxing state." Altman & Keesling, supra at 75.

Prior to 1963, Texas taxing authorities treated a corporation as a Texas corporation if its legal domicile was in Texas and as a foreign corporation if its legal domicile was in another state. Humble's legal domicile is Delaware, and it is conceded that, if *mobilia* applies, the receipts from dividends and interest in question would not be allocated to Humble's business done in Texas.

"Location of payor" is an exception to *mobilia*. About forty years ago it was adopted as the Texas rule for determining which receipts from intangibles should be allocated to Texas. A number of states have followed this test. Curry v. McCanless, 307 U.S. 357, 59 S.Ct. 900, 83 L.Ed. 1339 (1938); Consolidated Title Corp. v. District of Columbia, 107 U.S.App.D.C. 221, 275 F.2d 885 (1960); John Hancock Mutual Life Ins. Co. v. Neill, 79 Idaho 385, 319 P.2d 195 (1957); Union Electric Co. v. Morris, 359 Mo. 564, 222 S.W.2d 767 (1949); Petition of Union Electric Co., 349 Mo. 73, 161 S.W.2d 968, 143 A.L.R. 141 (1942); Union Electric Co. v. Coale, 347 Mo. 175, 146 S.W.2d 631 (1941); Montana Life Ins. Co. v. Shannon, 106 Mont. 500, 78 P.2d 946 (1938); Annot., 11 A.L.R.2d 323 (1950). Under it the domicile of the debtor or payor in the case of interest and the declaring corporation in the case of dividends is regarded as the location of the business receipt without regard to the domicile of the payee. Beamon, Paying Taxes to Other States, ch. 4, p. 18 (1963).

Texas taxing authorities, from 1917 until 1963 used the location of payor test in allocating receipts from intangibles to a corporation's business done in Texas. Under this test receipts of interest and dividends were included in the numerator of the franchise tax as a part of the business done in Texas if the *payor* was a Texas corporation or payor. Receipts from a foreign corporation or payor were not treated as business done in Texas. Humble's argument is that art. 12.02 did not disturb that long-standing method of allocating receipts.

"Business situs" is another exception to *mobilia* that has been employed in some states to allocate receipts between states. Instead of locating the payee or payor it locates the place where the intangible property is actually "employed as capital * * * or if the possession and control of the property has been localized in connection with a business, trade or profession in the state so that its substantial use and value attach to and become an asset of the business, trade or profession in the state." Altman & Keesling, supra at 77. Under this rule a corporation such as Humble, would

allocate to business done in Texas those receipts which it derives from intangibles that have become an integral part of its local business connected within Texas. 1943 Wis.L.Rev. 371. The rule is justified because of the governmental protection and benefits which the state of the situs accords to the taxpayer's property within the state. Guaranty Trust Co. of New York v. Commonwealth of Virginia, 305 U.S. 19, 59 S.Ct. 1, 83 L.Ed. 16 (1938); People of State of New York ex rel. Whitney v. Graves, 299 U.S. 366, 57 S.Ct. 237, 81 L.Ed. 285 (1937); Liverpool & London & Globe Ins. Co. of New York v. Board of Assessors, 221 U.S. 346, 31 S.Ct. 550, 55 L.Ed. 762 (1911); City of New Orleans v. Stempel, 175 U.S. 309, 20 S.Ct. 110, 44 L.Ed. 174 (1899); Smith v. Ajax Pipe Line Co., 87 F.2d 567 (8th Cir. 1937); 75 Harv.L.Rev. 953, 1006 (1962); 1943 Wis.L.Rev. 371.

The business situs rule has been used as an exception both to the *mobilia* and the commercial domicile tests. It has not been used in Texas as a test for franchise tax purposes, but it has been employed for other purposes. Texas Land & Cattle Co. v. City of Fort Worth, 73 S.W.2d 860 (Tex. Civ.App.1934, writ ref.); Jesse French Piano & Organ Co. v. City of Dallas, 61 S.W. 942 (Tex.Civ.App.1901, writ ref.). The Comptroller says that art. 12.02 adopted the business situs test. Humble urges that, in the event we hold that art. 12.02 adopted the commercial domicile test, we should hold that the article also adopted the business situs as an exception. Humble says that the greater portion of the intangibles in question have a business situs outside of Texas, and that receipts from those sources should not be allocated to its Texas business.

The "commercial domicile" test affords still another exception to *mobilia*. A corporation's commercial domicile is "where the principal place of business is located and from which the corporation's activities function and are managed." United Gas Corporation v. Fontenot, supra; 75

Harv.L.Rev. 953, 1005 (1952). The commercial domicile concept was first employed in tax cases by the United States Supreme Court in Wheeling Steel Corporation v. Fox, 298 U.S. 193, 56 S.Ct. 773, 80 L.Ed. 1143 (1936). Wheeling Steel, a Delaware corporation, was actually managed and controlled from its main offices in West Virginia and for that reason the court held:

> "The corporation established in West Virginia what has aptly been termed a 'commercial domicile.' It maintains its general business offices at Wheeling and there it keeps its books and accounting records. There its directors hold their meetings and its officers conduct the affairs of the corporation. There * * * 'the management functioned'. * * * *The corporation has made that the actual seat of its corporate government.*" (Emphasis added).

The rule allows the state in which a corporation has its commercial domicile to base a tax upon income from all of the corporation's intangibles which have not established an independent business situs elsewhere. First Bank Stock Corporation v. State of Minnesota, 301 U.S. 234, 57 S.Ct. 677, 81 L.Ed. 1061 (1937); Wheeling Steel Corporation v. Fox, supra; Southern Pacific Co. v. McColgan, supra; Udylite Corp. v. Michigan Corp., 319 Mich. 1, 29 N.W.2d 132 (1947); In re Wheeling Steel Corp. Assessment, 115 W.Va. 553, 177 S.E. 535, 104 A.L.R. 802 (1934); Altman & Keesling, Allocation of Income in State Taxation, 33–34, 61–66 (2d ed. 1950); Ramsey, New Theory of Corporate Domicile for Tax Purposes, 23 Am.Bar Ass'n Journal 543 (1937); Federal Limitations on State Taxation of Interstate Business, 75 Harv.L.Rev. 953, 1005–1006 (1952); 35 Mich.L.Rev. 1032 (1937).

Commercial domicile was not adopted in Texas as the test in allocating receipts to business done in Texas under old art. 7084. The Comptroller first asserted it as the correct test in 1963. If art. 12.02 adopted

this doctrine, the Comptroller properly included all of the receipts from the intangibles involved in this suit in the numerator of the tax formula as business done in Texas, because Humble's commercial domicile is in Texas.

Section 3 of Title 122a enacted at the time of the codification of the taxation statutes stated the standard of clarity required for legislative authorization of changes in the law. In our opinion the change of tests insisted upon by the Comptroller, are not consistent with the requirements of that section which provides:

"This Act shall be construed to make a substantive change in the prior law only where the language of this Act manifests a clear intent to make such a change." Acts 1959, 56th Leg.3rd C.S. p. 187, ch. 1.

The Comptroller relies upon the words of subsection (d) of art. 12.02 as the clear authorization for the asserted change. Those words, after listing certain specific allocations, are "All other business receipts within Texas." The statute nowhere explains or defines the ambiguous term, "business done in Texas." The Comptroller, however, finds in subsection (d) a clear legislative intent (1) to abandon the common law rule of *mobilia* and (2) the departmentally approved location of payor

test, (3) the adoption of the new business situs and the (4) commercial situs tests. In our opinion, the Comptroller reads too many far reaching concepts into an ambiguous subsection.

The Comptroller recognizes the difficulty presented by the absence of statutory language about commercial domicile and business situs. He attempts to meet the problem by arguing that, while the statute did not mention either one, it did indicate an intention to adopt a new test. Since the statute failed to show what the new test was to be, Comptroller argues that he is free to look to the common law to find it. When he looks there, however, he is confronted by the common law rule of *mobilia*. The Comptroller rejects *mobilia,* and, therefore, looks outside the statute and outside the common law to the commercial domicile and business situs tests. Section 3, supra, forbids the Comptroller to look anywhere except "the language of this Act," and any change must there be manifested clearly. The Comptroller's argument demonstrates that the asserted changes can not be found at the only place that they must be found.

The assessment of franchise taxes by the application of the commercial domicile and business situs doctrines must, as section 3 requires, be authorized by the statutes. States which have adopted either business situs [2] or commercial domicile [3] in franchise

2. *Arizona*: " * * * shall be allocated to the state in which the taxpayer has its principal place of business or commercial domicile." 13 Ariz.Rev.St.Ann. § 43–135 (g) (1956).

"Income derived from or attributable to sources within this state includes income from tangible or intangible property located or having a situs in this state * * *." 13 Ariz.Rev.St.Ann. § 43–101 (aa).

*California*: "Income of nonresidents from stocks, bonds, notes, or other intangible personal property is not income from sources within this State unless the property has acquired a business situs in this State, * * *." Cal.Rev. & Tax Code Ann. § 17952 (1958).

*Colorado*: "Income from sources within Colorado includes income from tangible

or intangible property located or having situs in this state * * *." 7 Colo.Rev. Stats., 1963, ch. 138–1–35 (Cum.Supp. 1966).

*Connecticut*: See Footnote 3.

*Idaho*: "The term 'business situs' shall include or be constituted by the owning or operating of business facilities or property or conducting business or farming operations, including soliciting business, within the state of Idaho, working for salary or wages, * * * provided, however, the receipt of income derived solely from interest and/or dividends from sources within the state of Idaho is expressly declared to be insufficient to establish business situs unless coupled

3. See note 3 on page 178.

tax problems have done so, as in *Wheeling,* supra, by statutory enactment. United Gas Corp. v. Fontenot, 241 La. 564, 129 So.2d 776 (1961); Southern Pacific Co. v. Mc-Colgan, supra; In re Dodge Brothers, Inc., 241 Mich. 665, 217 N.W. 777 (1928); In re Pantlind Hotel Co., 232 Mich. 330, 205 N.W. 99, 49 A.L.R. 1291 (1925); Chestnut Securities Co. v. Oklahoma Tax Commission, 173 Okl. 369, 48 P.2d 817 (1935). In *Fontenot,* supra, the Supreme Court of Louisiana refused to read the commercial domicile doctrine into a statute saying:

"[c]learly, our franchise tax law contains no language indicating an intent to abrogate the traditional general rule that intangibles owned by a foreign corporation have their situs at the legal domicile of such owner, except insofar as their use

with one or more of the qualifications hereinbefore set forth." 10 Idaho Code Ann. § 63–3023 (Supp.1965).

*Louisiana:* "Other interest and dividends shall be attributed to the state in which the securities or credits producing such revenue have their situs, which shall be at the business situs of such securities or credits, if they have been so used in connection with the taxpayer's business as to acquire a business situs, or in the absence of such a business situs shall be at the commercial domicile of the corporation." 25 La.Rev.Stats.Ann. § 47–606 (Supp.1965).

*Mississippi:* "Income from intangible property of any kind or nature, if the evidence of ownership has acquired a business, commercial, or actual situs in this state; * * *." 7 Miss.Code § 9220–12 (1964).

\* \* \* \* \* \* \*

3. *California:* " 'Commercial domicile' means the principal place from which the trade or business of the taxpayer is directed or managed." Cal.Rev. & Tax. Code Ann. Sec. 25120 (Supp.1966).

"Interest and dividends are allocable to this state if the taxpayer's commercial domicile is in this state." Cal.Rev. & Tax.Code Ann. § 25126.

*Colorado:* "Dividends received, and gains and losses realized from the sale of corporate stocks, less related expenses shall be allocated to the state in which the principal place of business of the corporation is located." 7 Colo.Rev. Stat., 1963, ch. 138–1–37.

*Connecticut:* "For the purposes of this section, the intangible assets of a company having its principal place of business within the state shall be deemed to have a tax situs within the state unless it can be clearly established that some or all of such assets are held in connection with business conducted during the income year without the state, and a similar rule shall apply to intangible assets of a company having its principal place of business without the state." 6 Conn.Gen.Stats. Ann. § 12–220.

*Kansas:* Has adopted the Uniform Division of Income for Taxation Purposes Act. Same as California, supra. 6 Kan. Stats.Ann. ch. 79–3271 and 79–3277 (1964).

*Oklahoma:* "(d) In the determination of the amount of tax payable under this Article where intangibles are involved, such as notes, accounts receivable, stocks, bonds, and other securities, including cash, and business of the corporation is managed, directed and controlled from within the State of Oklahoma, the value of such intangibles shall be apportioned wholly to Oklahoma, unless a commercial or business situs for such intangibles has been established elsewhere."

"(e) Management, direction and control of the corporation's business shall be deemed to be within the State of Oklahoma where (1) the corporation is incorporated under the laws of Oklahoma, or (2) where any corporation organized under the laws of some other state transacts in Oklahoma its principal business, or maintains in this state its 'business domicile' or 'commercial domicile.' " 68 Okla. Stats.Ann. § 1209 (1966).

*Louisiana:* "(4) Other interest, dividends, and profits from sales and exchanges of capital assets consisting of incorporeal property or rights, shall be allocated to the state in which the securities or credits producing such income have their situs, which shall be at the business situs of such securities or credits, if they have been so used in connection with the taxpayer's business as to acquire a business situs, or, in the absence of such a business situs, shall be at the legal domicile of the taxpayer in the case of an individual or at the commercial domicile of the taxpayer in the case of a corporation;" 25 La.Rev.Stats. Ann. § 47–243 (Supp.1965).

*Uniform Division of Income Tax Purposes Act,* Sec. 7: Interest and dividends are allocable to this state if the taxpayer's commercial domicile is in this state. Beaman, Paying Taxes to Other States, Appendix C.

# 179

in Louisiana operations would give them a business situs in this state. It does not in any manner provide for the allocation of assets to a state in which the corporation has a commercial domicile, as does our income tax law. * * *"

In the above cases the statutes which have adopted the doctrines have consistently used such terms as "commercial domicile," "principal place of business," "business situs" "receipts from the use of property with a situs in" a named state, "intangibles used as an integral part of business conducted in" a named state, or some other definitive language. Article 12.02 is barren of such terminology.

To support his contention that the language of art. 12.02, particularly subsection (d), encompasses the commercial domicile and business situs tests, the Comptroller relies on Udylite Corp. v. Michigan Corp., 319 Mich. 1, 29 N.W.2d 132 (1947), and J. M. & M. S. Browning Co. v. State Tax Comm., 107 Utah 457, 154 P.2d 993 (1945). Neither of these cases is applicable to the issue involved in the present case. In *Udylite,* supra, the court's decision was based on the construction of an amendment to the Michigan franchise tax statute which had been passed for the specific purpose of recognizing the concept of commercial domicile. Prior to the amendment's passage, the Supreme Court of Michigan had on two occasions refused to apply the commercial domicile test in the absence of specific statutory authority. In re Dodge Brothers, Inc., 241 Mich. 665, 217 N.W. 777 (1928) and In re Pantlind Hotel Co., 232 Mich. 330, 205 N.W. 99, 49 A.L.R. 1291 (1925). This amendment contained language such as "such property shall be considered to be located * * * in this state * * * If used in or acquired from the conduct of its business in this state, irrespective of the domicile of the corporation." No such language is employed in art. 12.02. The Supreme Court of Utah in *J. M. & M. S. Browning Co.,* supra, held that "business done," as used in Utah franchise tax statute, included the receipts from intangibles re-

ceived by a corporation from out-of-state sources. *J. M. & M. S. Browning Co.,* supra however, differs from the present case in that the Utah court was not confronted with a long-standing administrative interpretation of "business done." Like *Udylite Corp., J. M. & M. S. Browning Co.,* supra, has no bearing on whether art. 12.02 manifests a clear intent to change the prior law.

Nothing in the legislative history of art. 12.02 suggests any intent to change the administrative construction of art. 7084 or art. 12.02. In 1959 the Legislature examined and codified all of the taxation statutes. In 1959 the governor recommended that the 56th Legislature adopt a three-factor formula (gross receipts, pay roll, property) for the franchise tax instead of the single factor, gross receipts. 56th Leg.Reg.Sess., S. Jr. pp. 35–37. There were three called sessions, and at each of them, the governor urged departure from the one-factor formula. The codification was effected during the third called session but the single-factor formula was unchanged. The governor spoke of the single-factor formula as "the outmoded local receipts formula." 56th Leg.Reg.Sess., H. Jr. p. 695. In 1961, the governor proposed that the Legislature adopt a two-factor formula (property and gross receipts). He explained the single-factor formula in the same way he had two years earlier. He said that foreign corporations "pay only on that percentage of their capital, debt, etc., that their receipts from sales in Texas bear to their receipts from outside the State." 57th Leg.Reg. Sess., H. Jr. pp. 64, 65–66. Through all these sessions the problem confronted by the Legislature was whether the one factor "local receipts" formula should be replaced by a three-factor or a two-factor formula. The Legislature did not address itself to the changes that the Comptroller now says were made. The concepts of commercial domicile and business situs were never mentioned in the many bills introduced during the 56th and 57th Legislatures.

■ In view of the language and legislative history of art. 12.02, it is our opinion

that the 56th and 57th Legislatures did not intend to reject the location of payor test but through the doctrine of legislative acceptance made it a part of the present law. A statute of doubtful meaning that has been construed by the proper administrative officers, when re-enacted without any substantial change in verbiage, will ordinarily receive the same construction. Texas Employers' Ins. Ass'n v. Holmes, 145 Tex. 158, 196 S.W.2d 390 (1946); Stanford v. Butler, 142 Tex. 692, 181 S.W.2d 269, 153 A.L.R. 1054 (1944); Federal Crude Oil Co. v. Yount-Lee Oil Co., 122 Tex. 21, 52 S.W.2d 56 (1932); Franklin Fire Ins. Co. v. Hall, 112 Tex. 332, 247 S.W. 822 (1923); Heaton v. Bristol, 317 S.W.2d 86 (Tex.Civ.App. 1958, writ ref.), cert. denied, 359 U.S. 230, 79 S.Ct. 802, 3 L.Ed.2d 765; Flowers v. Pan American Refining Corporation, 154 S.W.2d 782 (Tex.Civ.App.1941, writ ref.); Clark v. Atlantic Pipe Line Co., 134 S.W. 2d 322 (Tex.Civ.App.1939, writ ref.).

█ The phrase "business done in Texas" in both old article 7084 and the recodified article 12.02 is ambiguous. From 1917 until 1963 receipts from intangibles were consistently allocated to states under the location of payor test. The domicile of corporations was determined by the common law *mobilia* rule. The franchise tax statutes were re-enacted six times before 1959, were recodified in that year, and were amended and re-enacted again in 1961. For four years after the seventh re-enactment in 1959 the Comptroller administratively applied the same test applied before 1959. The franchise tax report forms distributed by his office showed that dividends should continue to be reported as those received from "Texas Corporations" and those received from "All Corporations." See Huey & Philip Hardware Co. v. Shepperd, 151 Tex. 462, 251 S.W.2d 515 (1952). In 1961 the Legislature made amendments to the franchise tax law. Acts 1961, 57th Leg., 1st C.S., p. 71, ch. 24, art. 11. It again considered the franchise tax laws in 1962 and 1963. Up to that time neither the Comptroller nor the Legislature apparently entertained any idea that the long-standing departmental construction had been changed in 1959. It was four years after the 1959 codification that the Comptroller changed the franchise tax forms and accompanied them with instructions to include in the numerator of the formula "all dividends and interest received by a corporation whose principal business management is located in the State of Texas." The departmental construction of the ambiguous statute was of such long-standing that it should not be changed in the absence of clear statutory authorization.

█ The Comptroller argues that the inclusion of four new subsections in art. 12.-02 were additions to and revisions of old art. 7084. We regard them as a codification of long-standing departmental practices. Subsection (a) allocated receipts from sales of tangible personal property within Texas, subsection (b) allocated receipts from services performed within Texas, subsection (c) allocated receipts from rentals of property situated within Texas and royalties from patents and copyrights used within Texas, and subsection (d) allocated all other business receipts within Texas. Subsections (a), (b), and (c) show that the act done or the property producing the income must be located in Texas. It was the localization of the transaction in Texas and not the place of physical handing over or receiving of money that was significant. We do not understand the Comptroller contends otherwise. Subsection (d) logically meant all other business receipts of the same kind. It meant what it had always meant—local receipts, those that had their source in Texas and were paid by a Texas payor.

█ For the several reasons stated, art. 12.02 did not operate to change the departmental construction of art. 7084 with respect to the allocation of receipts from intangibles to a corporation's business done in Texas. We reverse the judgment of the court of civil appeals and affirm that of the district court.

STEAKLEY, J., not sitting in this case.