

# THE ATTORNEY GENERAL

## OF TEXAS

**AUSTIN, TEXAS 78711**

CRAWFORD C. MARTIN
ATTORNEY GENERAL

June 28, 1968

Honorable James E. Barlow
Criminal District Attorney
Bexar County Courthouse
San Antonio, Texas 78204

Opinion No. M-251

Re: Whether a Justice of the
Peace, acting as local
registrar, is authorized
to issue certified copies
of birth and death certifi-
cates, and related ques-
tions.

Dear Mr. Barlow:

You have requested an opinion of this office concerning
the above captioned matter, posing principally the following two
questions:

1. May a Justice of the Peace acting as local regis-
trar issue certified copies of birth and death certificates?

2. If the Justice of the Peace may do so, is the
money received by him a fee of office to be paid into the county
treasury, or is it a stipend that he may retain?

We are further advised by your letter request of the
following pertinent factual background:

"Justices of the Peace of Bexar County
acting as local registrars of vital statistics
under Rule 36a, Article 4477, V.A.C.S. have,
for some years past, been receiving fees or
stipends for issuing certified copies of birth
and death certificates. These copies are on
standard, State of Texas, Texas Department of
Health, Bureau of Vital Statistics forms cer-
tified to as true and correct copies by the
registrar as official custodian before a Notary
Public. Retention of these fees by the justices
has been questioned . . .

"...

"It has now come to our attention that
other local registrars, as well as Justices
of the Peace acting as local registrars, have
been issuing certified copies of birth and
death certificates . . .this practice is not
restricted to Bexar County . . .the practice
is state-wide.

"...

"There exists a Texas Vital Statistics
Manual published by the Texas Department of
Health, Bureau of Vital Statistics . . .
Local registrars appear to rely on this manual
for their authority to issue certificates and
upon the last sentence of the lead paragraph
of Rule 47a, Article 4477 (which) might give
an impression that the legislature intended
local registrars to issue certified copies
of birth certificates in Article 4477,
V.A.C.S." (Emphasis and parenthesis added).

Rule 47a of Article 4477 is captioned, "Form and
contents of birth certificates of adoption, annulment and
revocation." In empowering the State Department of Health
to promulgate the forms, rules, and regulations covering
birth certificates, including the activities of the local
registrars, the Legislature provided in the last sentence
of the lead paragraph of that rule the following:

"The state registrar, county clerk, or
local registrar shall not issue a certified
copy disclosing illegitimacy or otherwise
disclose illegitimacy unless the issuance
of the certified copy or the disclosure
is authorized by order of the county court
of the county in which the birth, death, or
fetal death occurred."

If the Legislature had not intended local registrars to issue any certified copies whatever, their inclusion in this statutory provision would have been unnecessary.

The various provisions of this statute are expressly stated to be "Subject to the regulations of the State Department of Health."

Rule 51a of Article 4477 captioned, "Blanks and registration forms; index of births and deaths; records; transcripts; fees; delayed registrations; judicial procedure to establish facts of birth," provides a substantially similar pattern for the supervision and promulgation of rules and regulations by the State Department of Health covering that subject matter.

However, the statutes are silent in conferring any express authority on local registrars to issue certified copies of birth or death certificates. Yet, except in the case of copies involving illegitimacy above noted, neither do the statutes contain any express prohibitions in appropriate language which would have the effect of preventing local registrars from issuing such certified copies, particularly if authorized to do so by administrative rulings or authorization by the State Department of Health. Had the Legislature intended that such administrative agency be prohibited from authorizing local registrars to issue such certified copies of its own records, it could have easily done so with an appropriate statutory directive, and no doubt would have done so. Instead of so doing, it implied that local registrars might issue certified copies of birth certificates, except in the one instance where the same disclosed illegitimacy.

In pursuance of its authority to prescribe rules and regulations under the law, the Department of Health has attempted to advise the public and the local registrars through the above Manual, which you advise "contains a section devoted to Certification of Vital Records (pp. T-1 to T-9). It sets forth Rule 54a (Supra), Rule 51a and portions of Rule 47a (Supra) of Article 4477, V.A.C.S., as well as Article 1939a, V.A.C.S., which provides in pertinent part:

"'Article 1. Any person, his guardian
or his dependents or heirs at law who is el-
igible to make a claim against the Government
of the United States of America as a result of
service in the Armed Forces of the United States
of America, or the services auxiliary thereto,
including the Maritime Service and the Merchant
Marine, shall upon the request therefor by such
person, his guardian, or his dependents, or heirs
at law, be furnished without cost a certified
and authenticated copy or copies of any instru-
ment, public record or document necessary to
prove or establish such claim, which is in the
custody or on file in the office of County
Clerks, District Clerks and other public
officials of this State, by such officials.
Provided, the issuance of such certified or
authenticated copy or copies by such officials
shall not be considered in determining the maxi-
mum fee of such offices.'"

You state that in the manual there are "cited
several old opinions of the Attorney General's office, including
O-1386 dated November 7, 1939, which states that the County
Clerk has the authority under Article 3930, R.C.S. to issue
certified copies of Vital Statistics on file in his office
and citing Article 4477, V.A.C.S. . . .

"The above section of the vital statistics manual
on page T-8 under Administrative Directions contains . . .
affirmative direction . . . as to local registrars issuing
certified copies of birth and death certificates. It states:

'A local registrar or county clerk is
authorized to issue a certification from any
birth, death, or fetal death record in his
office even though such record may not be
registered in the State Bureau of Vital
Statistics.'

"Two paragraphs later is found the
statement:

'B. Types of Certifications.

A complete certified copy of a record of birth, death or fetal death should include a complete copy of the original record, a complete copy of any amendment(s) thereto, and the certification of the issuing official.'

"There is also contained in the manual a sample copy of Application for Certified Copy of Birth Certificate with instructions to mail same to the Bureau of Vital Statistics, Texas Department of Health, Austin, Texas, and finally commencing on page V-1 are instructions on where to obtain birth certificates in all of the states. Under Texas the address is the Bureau of Vital Statistics, State Department of Health, Austin, Texas, and indicates the State office has records since 1903.

"On August 7, 1961, the State Registrar sent a notice to all local registration officials announcing the passage and effective date of Senate Bill 69, 57th Legislature and within this notice stated:

'This Bill increases the certified copy fee of this office from $1.00 to $1.50. It does not change the fee collected by the county clerks and local registrars for issuing a certified copy.'"

Under the existing statutes in 1942, and in the absence of any departmental regulations, ruling or construction, this office did render Opinion No. O-4378 (1942) to the effect that such statutes as then worded failed to confer any express authority upon Justices of the Peace, acting as Local Registrars of vital statistics, to issue certified copies of birth or death certificates filed in their offices. Regardless of the merit of this opinion, and without passing upon whether it correctly applied the law to the statutory situation then existing, it appears that the opinion was never consistently or uniformly applied or followed by the department responsible for the administration of the law. The construction of a statute by the Attorney General is entitled to little consideration, if any at all, under such circumstances. Eddins-Walcher Butane Co. v.

Calvert, 298 S.W.2d 93, 97 (Tex.Civ.App. 1957, no writ).

On the other hand by 1960, the prior administrative practice under the statutes here involved had developed and the State Health Department did at that time issue its "Manual" of instructions and disseminate on a state-wide basis its administrative construction and practice to the effect that local registrars could issue certified copies of birth and death certificates. This is tantamount to a ruling or authorization promulgated by the State Department of Health. The practice has apparently ever since been consistently followed and relied upon by all concerned and after successive Legislatures have convened.

Apparently, the Department of Health, in construing the general civil statute, gave a liberal construction to its provisions to effectuate the legislative intent. 53 Tex.Jur. 2d 298, Statutes, § 194. Under Rule 55a of Article 4477, the state registrar was expressly granted "supervisory powers" over local registrars, who were also expressly charged with enforcement duties under the state registrar's "direction." Furthermore, it was clear that the justice of the peace, acting as a local registrar, had been given the affirmative duty to record a complete and accurate copy of each birth and death certificate in a permanent book. Attorney General's Opinion No. O-3802 (1941). No doubt, as an incidental or collateral duty, the department interpreted the detail of issuance of certified copies by such public officer as serving to promote and benefiting the accomplishment of the principal purpose of the recording duty. There is authority for the view that incidental and implied powers may arise from a statute which fails to limit the exercise of official duty. In 43 Am.Juris. 69, Public Officers, § 250, it is stated:

"The prescription of official duties by statute . . .is not an exclusive test of authority, when neither express provision nor implication from the nature of the office calls for it. The duties of a public office include all those which fairly lie within its scope, those which are essential to the accomplishment of the main purposes for which the office was

created, and those which, although incidental
and collateral, are germane to or serve to
promote or benefit, the accomplishment of the
principal purposes."

In 1962, the practice by a Justice of the Peace,
acting as a local registrar, and issuing a certified copy of
a death certificate, was judicially noted in Armstrong v. Employers Casualty Company, 357 S.W.2d 168, 170 (Tex.Civ.App.
1962, no writ). The court did not hold such to be an illegal
act, but it did hold that the certified copy would not be admissible in the trial as prima facie evidence, since the provision for admission into evidence set out in Rule 54a applies only to copies certified by the State Registrar of
Vital Statistics. However, we observe that there are numerous
other purposes for which certified copies are sought besides
that of serving as evidence in a court of law.

In view of the statutory uncertainty and the construction given the statutes by the department responsible for
the administration of the law, and particularly its ruling
and instructions issued by it, which we are not prepared to
say are unreasonable or clearly wrong, it is our view that
the courts will ordinarily adopt and uphold such departmental
construction and ruling, though the court might otherwise
have been inclined to place a different construction on the
act. 53 Tex.Jur.2d 259, Statutes, § 177, and cited cases;
Humble Oil & Refining Co. v. Calvert, 414 S.W.2d 172 (Tex.
Sup. 1967). In addition, the Legislature is presumed to have
known of such construction and practice and acquiesced in it
by its failure to amend or change it. 53 Tex.Jur.2d 269,
Statutes, § 180, and cited cases; Burroughs v. Lyles, 142 Tex.
704, 181 S.W.2d 570, 573 (1944), holding that a long-continued
administrative construction is entitled to great weight particularly when "the Legislature, which is presumed to have been
aware of the interpretation, made no changes in the language
that would indicate a contrary intent."

The remaining question presented is whether the
money received by a Justice of the Peace acting as a local
registrar is a "fee of office" to be covered into the County
Treasury or is a stipend the Justice may retain? It is the
opinion of this office that the money received under the

circumstances must be regarded as a fee of office and accountable as such. Since we have held that there is authority for the local registrar to issue certified copies of vital statistics pursuant to the regulations and rulings of the State Department of Health, then it would follow that by making the certification in the scope of his duties the registrar has acted officially and such fee of office should be paid into the County Treasury. This office has so ruled on substantially the same questions in Attorney General's Opinions O-3655 (1941) and O-419 (1939), to which your attention is directed.

We are aware of the uncertainties faced by all concerned in the interpretation and administration of the law under the statutes with which we are concerned and the need for amending such statutes and making certain that which is left to uncertainty and implication. If the result reached in this opinion is not the legal result intended by the Legislature, such statutes can and will surely be amended accordingly in the next session of the Legislature.

### S U M M A R Y

In view of the long departmental administrative ruling and practice under Article 4477, Vernon's Civil Statutes, Justices of the Peace acting as local registrars of births and deaths, may issue certified copies of birth and death certificates under the authority of the rules and instructions of the State Registrar; and the money collected by them for such copies constitute fees of office which should be paid into the County Treasury.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Philip G. Warner
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Hawthorne Phillips, Chairman
Kerns Taylor, Co-Chairman
Robert Flowers
Houghton Brownlee
J. C. Davis
Roger Tyler

A. J. CARUBBI, JR.
Executive Assistant